WILLIAM W. FARNAM AND OTHERS, EXECUTORS, *vs.*
GEORGE B. FARNAM AND OTHERS.

A testator gave a large estate to trustees upon the following trust:—(1) Out of the net income to pay his widow during her life $25,000 annually.—(2) To pay to each of his five children out of the net income $5,000 annually during their lives.—(3) To pay to each of his grandchildren out of the income on their arriving at the age of twenty-one, $5,000.—(4) During the ten years succeeding the death of the testator to allow the annual income, after the above payments, to accumulate, and to invest the accumulation as a part of the trust estate; and after the expiration of the ten years to pay two thirds of the net income annually to his children then surviving and the legal representatives of such as might have died, and allow the remaining third to accumulate and add it to the trust estate.—(5) At the decease of the last survivor of the children, if his widow should not then be living, but if living then at her death, the trust to cease, and all the estate to go to his grandchildren who should then be living, to be divided among them *per capita;* the children of any deceased grandchild to take the parent's share, and if any grandchild had died leaving a widow, but no children, such widow to take one third the share her husband would have been entitled to if living. Held—

1. That the grandchildren living at the time of the testator's death took a vested interest in the remainder of the trust estate.

2. That they took as a class—opening to let in after-born grandchildren, while, if any died before the time for distribution, without children and not leaving a widow, his title divested.

3. That the disposition of the property therefore did not conflict with the statute against perpetuities.

4. That the annuity to the children was payable to the family of a deceased child during the continuance of the trust.

5. That the gift of two thirds of the net income after the first ten years was in addition to the annuities previously given to the children and not a substitute for them.

6. That by "the legal representative" of children, under the fourth head, was meant those who would take under the statute of distribution, meaning the widow and heirs at law.

[Argued June 11th—decided November 13th, 1885.]

SUIT by executors and trustees for an adjudication as to the construction and validity of a will ; brought to the Superior Court. The following facts, set forth in the complaint, were admitted by the parties and found by the court :

Henry Farnam, of New Haven in this state, died in October, 1883, leaving an estate, mainly personal, of eighteen hundred thousand dollars, and a will, executed on the 22d of April, 1882, which was duly proved in the probate court after his death. He left a widow, and five children, four of the children being sons of the ages respectively, at the time of the testator's death, of forty-two, thirty-nine, thirty-seven and twenty-nine years, and one a daughter of the age of thirty-three ; also fourteen grandchildren, all under the age of twenty-one. He was in his seventy-ninth year at the time of his death.

By the second article of his will he gave his widow the use for life of his homestead, with his furniture, books, pictures and other household effects, and his horses and carriages, and provided for the disposition of them, except the silverware and certain of the pictures, after her death. By the third article he distributed certain pictures and his silverware among his children. The remainder of the will is as follows :

" *Fourth.*—All the rest and residue of my estate of every kind and wherever situated I give, devise and bequeath to my wife, Ann Sophia Farnam, and my children, George Bronson Farnam, William Whitman Farnam, Charles Henry Farnam, Sarah Sheffield Farnam, wife of Eli Whitney, Jr., and Henry Walcott Farnam, and to the survivors and survivor of them, as joint tenants in fee simple, but in trust for the uses and purposes following, to wit :

" 1. Out of the net income and profits thereof to pay to my said wife, Ann Sophia Farnam, during her life, the sum of twenty-five thousand dollars, annually, in quarterly payments, beginning on the first day of the month next succeeding that of my decease. This bequest and that contained in the second article of this will is in lieu of her right of dower in my estate.

" 2. The said trustees are, out of said net annual income, to pay to each of my children during their lives respectively, the sum of five thousand dollars annually, in quarterly payments, beginning on the first day of the month next succeeding that of my decease.

" 3. The said trustees are out of said net annual income to pay to each of my grandchildren as and when he or she shall arrive at the age of twenty-one years, the sum of five thousand dollars.

" 4. During the ten years next succeeding my decease the said trustees shall allow the said net annual income to accumulate (subject always to the payment of said annuities to my said wife and to my said children, and also to any payments to grandchildren as aforesaid), and invest the same as part of said trust estate, and said trustees after the expiration of said ten years shall pay two thirds of the net annual income of said estate annually to my children then surviving, in equal proportions; and if any of my said children shall have then deceased, his or her legal representatives shall be entitled to the share of said annual income that he or she would be entitled to if living; and said trustees shall allow the remaining one third of said net annual income to accumulate, and invest the same as part of said trust estate.

" *Fifth.*—At the decease of the last survivor of my said children, if my said wife shall not then be living, but if living, then upon her death, this trust shall cease, and I give, devise and bequeath all the estate which shall then be held in trust under this will to my grandchildren who shall then be living, to be equally divided among them *per capita* and not *per stirpes,* and to their heirs forever; but if any grandchild of mine shall have died leaving a child or children sur-

viving at the expiration of said trust, such child or children shall take the share that his, her or their parent would have been entitled to if living; and if any grandchild of mine shall have died leaving a widow surviving at the expiration of said trust, but leaving no child or children then surviving, such widow shall take one third of the share her husband would have been entitled to if living.

" *Sixth.*—I authorize and empower my said trustees and the survivors and survivor of them to sell and convey any property held by them in trust, real or personal, and to invest and re-invest the moneys of said trust fund at their discretion. The said trustees are to receive no compensation as such, but they are to be allowed a reasonable compensation for any service rendered, and are also to be allowed all their necessary expenses when away from home on the business of the estate.

" *Seventh.*—I constitute and appoint my wife, Ann Sophia Farnam, my sons, George Bronson Farnam, William Whitman Farnam, Charles Henry Farnam, and Henry Walcott Farnam, and my daughter, Sarah Sheffield, wife of Eli Whitney, Jr., executors hereof; and I direct that no bond be required of them, or of either of them, by the court of probate, either as executors or as trustees."

The complaint alleged that the following questions had arisen with regard to the construction, validity, and legal effect of some of the foregoing provisions of the will, as to which the plaintiffs asked the adjudication of the court.

1. Whether the trust created or sought to be created by the fourth article of the will is, taken in connection with the other provisions of the will, valid, legal and operative and capable of being carried out, and whether the trust estate thereby created, or which it was attempted to create, is now a valid and subsisting trust estate, and whether the provisions for accumulation in the fourth article are legal and valid provisions, and, if not, whether the other provisions of the fourth article or of article fifth are thereby inoperative and void, in whole or in part.

2. Whether the provisions of article fourth taken in con-

nection with the provisions of the fifth article, suspend the power of alienation for more than two lives, either actually or by possibility, and whether, if the power of alienation be thereby suspended for more than two lives, the trust which was sought to be created by the fourth article is thereby rendered inoperative and void, and if so, to what extent.

3. Whether the trust estate sought to be created by the fourth article taken in connection with the fifth article is void, either in whole or in part, as in contravention of the statute of this state against perpetuities.

4. In the event of the trust being adjudged to be inoperative and void, in whole or in part, then to whom and in what proportion and in what manner that portion of the estate as to which said trust is adjudged to be inoperative (if any there be) shall be conveyed?

5. Whether any of the gifts, devises or bequests made, or sought to be made, in the fourth and fifth articles, are inoperative and invalid, and, if so, then to whom and in what proportions such parts of the estate granted by any of the provisions of the articles which are adjudged to be inoperative (if any there be) go and of right belong?

6. Whether in case of the death of a child of the testator at any time within the period of ten years from the testator's decease, the annuity of five thousand dollars given to such child by the second clause of the fourth article of the will would be payable to that child's legal representatives or heirs for the remainder of the period between such child's death and the expiration of the ten years, and, if so, to what representatives or heirs and in what proportions?

7. Whether the gift to each of the testator's children from and after the expiration of ten years from his decease of a *pro rata* share of two thirds of the net annual income of the trust fund annually, as provided in the fourth clause of the fourth article, is by way of substitution for the annuity of five thousand dollars given to each child by the second clause of the fourth article, or whether such gift of two thirds of the income to each child is cumulative and in addition to the annuity of five thousand dollars given to each child during his or her life.

8. What is the construction and legal effect of the phrase in the fourth clause of the fourth article which reads as follows: " If any of my children shall have then deceased, his or her legal representatives shall be entitled to the share of said annual income, that he or she would be entitled to if living ?" Does the phrase " legal representatives," as there used, mean executors or administrators of a deceased child taking the gift of the income as part of the personal estate of the child so dying, so as to vest a beneficial estate in the child so dying subject to disposition by will and liable for his debts? Or does the phrase " legal representatives," as there used, mean simply children or lineal descendants ? Or does it mean those persons who upon a child's decease would be entitled to his personal estate according to the Connecticut statute of distributions in case of intestacy ?

All persons interested were before the court either as plaintiffs or defendants. The defendants filed answers, admitting the facts alleged in the complaint, and setting forth their respective claims with regard to the construction of the will, and joined in asking for an adjudication upon the questions involved.

The case was reserved for the advice of this court.

*L. H. Bristol,* for the plaintiffs.

*C. R. Ingersoll,* for the heirs at law.

1. The will is, in its general scheme, in contravention of the statute against perpetuities. It is manifest that the general intent of the testator was to create, by the accumulation of his estate during the lives of his children, a very large fund which, in the course of the second quarter of the next century, should be distributed in fee among his descendants then living, of the third or fourth generations from himself; all of whom might possibly be, and many if not most of whom, in all reasonable probability, would be, persons not in being in 1882, nor the immediate issue or descendants of persons then in being. But this the law of this state will not allow. Gen. Statutes, p. 352, sec. 3. It is not enough

that the estate may vest within the statutory period. It is now well settled both in this country and in England that the limitation of an estate to be valid, must be such that its vesting can by no possibility be postponed beyond the statutory limit. *Fosdick* v. *Fosdick*, 6 Allen, 43; *Rand* v. *Butler*, 48 Conn., 299; *Alfred* v. *Marks*, 49 id., 473; *Wheeler* v. *Fellowes*, 52 id., 238.

2. Is then this estate, limited over upon the death of the testator's last surviving child, one that must necessarily vest at some time in persons to whom the capacity to take is given by our statute? We submit that it will not necessarily so vest. The purpose of the trust, certainly a principal purpose, is to prevent any such vesting. That purpose is to provide for the accumulation of the income, so that the *corpus* of the estate which is to be subject to the limitation over shall be another *corpus* than that originally given to the trustees. And therefore the testator provides that upon the cessation of the trust, "I give, devise and bequeath all the estate which shall *then* be held in trust under this will to my grandchildren who shall *then* be living, to be equally divided among them *per capita* and not *per stirpes*." The intention that there should be no vesting of the estate until the trust had ceased is also apparent from the provision that in case of the death of any grandchild leaving a child, such child shall take the share its parent would have been entitled to if living. This provision would have been unnecessary if the share had already vested in the parent, for the child would be entitled to it by descent. And so the provision for the widow of a deceased grandchild would have been useless. For if there had been a vesting of the estate in the grandchild, the widow would have taken her moiety of her husband's share by the statute of distribution. It is true that this vesting of the estate in a person not having the statutory capacity can occur only in the event of a grandchild dying before the distribution in fee. But there is not only no "impossibility" of this event occurring, but its occurrence is in the highest degree probable, if not reasonably certain. And the will itself so regards it by providing for

the contingency. In *Wheeler* v. *Fellowes* the court found that such an event might reasonably occur in eighteen years from the death of the testator and that "thirty-eight years was time enough for a grandchild born after a will to grow up and have children and grandchildren ;" thus making three generations after the making of the will. It is also to be noted here that these great grandchildren and widows of deceased grandchildren take *directly by the will*, as in the cases supposed by the court in *Wheeler* v. *Fellowes*. Nothing, as we have seen, can have vested in the deceased grandchild, and therefore nothing can come to his children by way of substitution, as in the course of descent or distribution. It cannot, therefore, be said that the "class" which takes by the limitation over is the class of grandchildren, and that there is a gift over to another class, to wit, their children ; and that although the gift over may be void, the gift to the original class will be good. There is but one class of takers by the will. It is constituted of the grandchildren then living, and the children of those who have before that time deceased. They all take *directly* from the will. This is made clear in the late English cases of *Bentinck* v. *Duke of Portland*, 7 L. R., Ch. Div., 693, and *Pearks* v. *Moseley*, L. R., 5 App. Cas., 714, in both of which cases the limitation over was like that in the will in question, and the claim we have just referred to was made and disregarded. Here, it is manifest, the ultimate amount of no one donee's share can be finally ascertained until it is known who are to take, and that cannot be known until the time for the distribution. *Sears* v. *Russell*, 8 Gray, 100. It is by no means certain that upon the event calling for the transfer of this estate by the trustees, there will be any persons then living to take it, according to the will, who have the capacity to take it by the statute. The court certainly cannot say that it is impossible that this will be so. But whether such persons be many or few is not material. If the vice of remoteness may exist in some of those persons to whom the limitation over is made, the court cannot say that it may not exist in all. Nor if it may exist in any can the court say in which of the

takers it will be, and much less separate the sound takers from the unsound. For this reason it is that the rule is now well settled in the law of perpetuities, that the vice of remoteness affects a class as a whole if it may affect an unascertained number of its members. 1 Jarman on Wills, (5th Am. ed.,) 530; 2 Washb. Real Prop., (4th ed.,) 703; *Hall* v. *Hall*, 123 Mass., 120.

3. The limitation over of the trust estate being void, the trust created for the support of the gift over must fail. Undoubtedly when a will contains different trusts, some of which are valid and others invalid, or where the same trust contains different provisions some of which are valid and others invalid, the trusts and provisions will be preserved, unless those which are valid and those which are invalid are interwoven together and so dependent upon each other that they cannot be separated without defeating the general intent of the testator. *Irving* v. *DeKay*, 9 Paige, 521; *Smith* v. *Edwards*, 88 N. York, 104. The trust for the annuity to Mrs. Farnam is of this character. It is entirely independent of the general scheme of the will, and can be separated from the main body of the trust without interfering, in the least, with the general intent of the testator. The direction to the trustees to *invest* is of the "*net* annual income" after the payment of Mrs. Farnam's annuity. Otherwise there is no provision for her annuity after the ten years. But the trust which relates to the "*net* annual income" has for its object the very creation of the estate which is the subject of the void limitation over, and must therefore fall with it. *Harris* v. *Clark*, 3 Seld., 242; *Thorndike* v. *Loring*, 15 Gray, 391; *Sears* v. *Hardy*, 120 Mass., 524.

4. The phrase "immediate issue or descendants" in the statute is to be construed in the natural and ordinary sense of those words, that is, persons born immediately of persons in being. This is the construction uniformly given to the words by the courts of this state, and it is required by the obvious sense of the word "descendant," particularly when it is used, as it is in this statute, as a word descriptive of one taking by *purchase*. "A gift to *descendants* receives a con-

struction answering to the obvious sense of the term; namely, as comprising issue of every degree." 2 Jarman on Wills, (5th Am. ed.,) 632. See also *Sears* v. *Russell*, 8 Gray, 100; *Baker* v. *Baker*, id., 101; *Van Beuren* v. *Dash*, 30 N. York, 393.

5. The annuity of $5,000 payable to each of the children by the second paragraph of article fourth is, in case of the death of such child during the ten years next succeeding the testator's decease, payable to the legal representatives of such child. The testator could not have intended to leave the family which such deceased child might have without the provision he had made for it during such child's life. This is plain by the provision, to be found in paragraph fourth of the same article, in case of the death of such child *after* the expiration of the ten years. The supposition that he intended such provision after the ten years but not before, is too unreasonable to be entertained.

6. The gift to each of the children after the expiration of ten years from the testator's decease, of a *pro rata* share of the net income as provided in the fourth paragraph of the fourth article, is not in substitution for the annuity of $5,000 given by the second paragraph of the article, but is cumulative. The gifts being different in amount, the presumption is that they were intended to be cumulative. 2 Redf. on Wills, 178. The language of the testator forbids any other construction. It shows an intent that the three payments, 1st, of $25,000 annually to the widow "during her life," 2d, of $5,000 annually to each of the children "during their lives respectively," and 3d, of $5,000 to each of the grandchildren on arriving at the age of twenty-one—are to be paid in any event, and before the process of accumulation is to go into operation.

7. The "legal representatives" intended by the will, in the fourth clause of the fourth article, must either mean the executors or administrators of the deceased child, or else those who would take his personal estate according to the statute of distributions in case of intestacy. *Primâ facie* the words mean "executors and administrators." And this

meaning will only give way to a different intention to be gathered from the whole will. 2 Redf. on Wills, 82. The fifth clause does show that the testator had the intention to provide for a deceased grandchild's widow who should survive at the expiration of the trust. It is not reasonable to suppose that he intended to exclude the widow of a child dying during the continuance of the trust from some similar provision. But she will be left without any provision for her support whatever, unless the testator intended either to give the husband control over his beneficial interest, so that he can provide for her by will, or that such interest shall go to his "legal representatives" as they are pointed out by the statute of distributions—that is, the widow and children,—those who would "legally" take the property if he should die intestate. Such meaning will, therefore, be given to these words that the intention of the testator to make such provisions for the family of his children may be effectuated. "The statute of distribution governs in all cases where there is no will, and where there is one, and the testator's intention is in doubt, the statute is a safe guide." *Lyon* v. *Acker*, 33 Conn., 225.

*J. W. Alling* and *S. C. Loomis*, for the grandchildren of the testator.

1. The will of the testator is to have effect unless contrary to law, and if contrary to law, to lose effect only so far as the law is violated. 1 Redf. on Wills, 428; 3 Jarman on Wills, (Am. ed.,) 709. If this will offends the law, as to the class of great grandchildren and widows of deceased grandchildren, it satisfies the law that that class does not take. Their inability to take ought not to deprive a class who can take, whom the testator most sedulously designed to take, of their right to take. *In re Moseley's Trusts*, 24 Law Times, 260. There is no difficulty except as to possible widows of deceased grandchildren, and as to possible issue of grandchildren born since the making of the will and dying before the final distribution. The children or issue of grandchildren can take as the "immediate issue or descendants" of

persons in being when the will was made. This point was expressly ruled under the statute of Ohio, which is a copy of ours, in the case of *Turley* v. *Turley*, 11 Ohio St., 173, and in a case just decided, under the same Ohio statute, in the U. S. Supreme Court. *McArthur* v. *Scott*, 113 U. S. Reps., 340. There plainly can be no other reasonable construction of the phrase "immediate issue or descendants," unless it be ruled that both expressions mean precisely the same thing. Surely a gift to a son for life, and at his death to his immediate issue or descendants, would be good, for the language follows the statute. Under such a will, if all the son's children were dead, leaving grandchildren, would not such grandchildren take as descendants? Such a construction would satisfy the demands of public policy concerning the vesting of estates; that requires that such estates must vest at least by the expiration of a life in being; it is not so particular in whom such estate vests, after the lapse of a life in being. If this will had provided that the final distribution should be among all his grandchildren then living, and to the issue of grandchildren alive at the making of the will but dying before distribution, such issue to take the grandchild's share, this clearly would have been good. Surely the provision as to the class of possible issue of possible grandchildren who should be possibly dead at the time of final distribution, is altogether too vague to affect the clear intent of the testator in regard to his grandchildren. We further say that there is no soundness in the rule, which seems established in the English courts, that if a gift is to the members of a class severally, as individual owners of personal property, or as tenants in common of real estate, and it is possible, and only possible, that there may be, at the time of the distribution, some members of the class who could not take as purchasers, therefore the gift shall fail as to all members of the class. The period of the suspension of vesting is precisely the same as if the gift had been confined to those who certainly could take at the time of distribution. If the gift had been so confined, and at the time of the distribution there should

be no persons of the required class to take (assuming that the gift is wholly contingent until the time of distribution,) the whole estate would, of course, vest in the heirs. How then can it be that, when the period of the suspension of the vesting is the same, the gift is wholly good *ab initio* in the one case, and wholly void *ab initio* in the other? What difficulty is there in measuring out the penalty of the offense against the statute of perpetuities, according to the nature of the offense? *Catlin* v. *Brown*, 11 Hare, 372; *Knapping* v. *Tomlinson*, 28 Jurist, 626. If it be so that the gift is void as to all the great grandchildren because void as to some of them, it may be perfectly valid as to the grandchildren who are alive at the expiration of the trust.

2. We contend that the shares of the grandchildren vested in interest upon the death of the testator, liable to open at any time before final distribution and let in subsequently born grandchildren, whose interest vests at birth, liable to be divested by the limitations over in case of death; which limitations are, in case of death leaving issue, in favor of such issue, and in case of death leaving no issue, by implication in favor of all the other grandchildren; and if in any case such limitations over are void, by reason of the statute of perpetuities, then no divesting takes place. A grandchild born since the making of the will, and dying, leaving children, suffers no divesting of his share, because the limitation over which causes such divesting is void. There is no difficulty in the claim that the class would open to take in subsequently born grandchildren. It is the general rule that wherever an estate vests in interest at the death of a testator in a class, but the distribution and possession are postponed, the class opens to let in subsequently born members up to the time of the distribution. *Loockerman* v. *McBlair*, 6 Gill, 179; *Walker* v. *Shore*, 15 Ves., 125. The principal contest will be on the question whether the shares of the grandchildren vest in interest before, or are wholly contingent until, the time of final distribution. It is impossible to advert to or reconcile all the cases on this subject. In *Duffield* v. *Duffield*, 1 Dow & Clark,

297, Lord ELDON said that from *Boraston's case* down to that time (1829), the number of cases bearing upon the question when an estate became vested, was a hundred and seventy. In the same case BEST, C. J., said :—"In consideration of these circumstances, the judges from the earliest times were always inclined to decide that estates devised were vested, and it has long been an established rule for the guidance of courts at Westminster, in construing devises, that all estates are to be holden to be vested, except estates in the devise of which a condition, precedent to the vesting, is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will." See also *Booth* v. *Booth*, 4 Ves., 399; *Farmer* v. *Francis*, 2 Bing., 151; *Kevern* v. *Williams*, 5 Sim., 171; *Oddie* v. *Brown*, 4 De Gex & Jones, 179; *In re Moseley's Trusts*, 24 Law Times, 260. The same rule is laid down in the American cases. That of *Nodine* v. *Greenfield*, 7 Paige, 544, was a case of a will of real and personal estate to a wife for life, with remainder in fee to the children of a brother who should be living at the time of her death, and to the issue of such of the children as should then have died leaving issue. It was held that children of the brother, in *esse* at the death of the testator, took vested interests in fee, subject to open and let in after-born children, and subject also to be divested by death during the continuance of the life estate of the widow. The case of *Williamson* v. *Field*, 2 Sandf. Ch., 533, contains an exhaustive review of the authorities. It was a case of a will to a grandson for life, and after his death to his lawful issue living at his death. It was held that the children of the grandson, all born after the death of the testator, took vested interests as they were born, liable to be divested by death before that of the grandson, and opening to let in after-born children of the grandson. See also 1 Swift's Dig., 102; *Shattuck* v. *Stedman*, 2 Pick., 468; *Doe* v. *Provoost*, 4 Johns., 61; *Cushney* v. *Henry*, 4 Paige, 345; *Moore* v. *Lyons*, 25 Wend., 144; *Campbell* v. *Rawdon*, 18 N. York, 415; *Downing* v. *Marshall*, 23 id., 366. Clearly it was not

a vital thing in the testator's mind that the grandchild should be living at the time of distribution. There is nothing to forbid the idea that a grandchild had an interest as soon as born, for as soon as born he or she answered the required description of a grandchild. Besides, it is clear that the testator's principal idea was to preserve and increase the principal of his large fortune, as long as he reasonably could, but then to distribute it in possession, equally to his grandchildren and those who should represent dead grandchildren. There is not the slightest hint in the will of an objection to the estate vesting in interest in the grandchildren as soon as born, subject to be divested in the manner claimed. The phrase "then living" does not create a condition precedent; it only serves as a distinction between living grandchildren and the issue of dead grandchildren. *Bowker* v. *Bowker*, 9 Cush., 519; *Chew's Appeal*, 37 Penn. St., 23, 28. We say that, clearly, in this will it is the possession that is withheld until the life of the last surviving child, not the vesting of the right. There is no doubt but that there is no divesting of the right if the divesting limitation over is void. *Blease* v. *Burgh*, 2 Beav., 221; *Arnold* v. *Congreve*, 1 Russ. & Mylne, 209. And this construction is not contrary to the real intention of the testator. The grandchildren, who would then take a vested interest in the property, not subject to be divested, are the primary objects of the testator's bounty, and the clause in the will giving it over in case of the death of one of them, is simply to insure equality in the distribution among them. The construction for which we contend gives effect to the will in all contingencies, except as to those limitations over, if any, that are void; and in case of the void limitations it leaves the estate so that the parties whom the testator had in mind would probably get it by inheritance. For as the estate vests of right on the death of the testator in grandchildren, there can be no question about an offense against the statute of perpetuities. It is no violation of that statute, of course, if such vesting is not defeated by void limitations over, or not divested by unlawful subsequent conditions.

3. We apprehend that in any event there can be no question but that each grandchild takes a vested interest in the several legacies of $5,000, payable at twenty-one years of age, and in case of subsequently born grandchildren, such interest vests at birth, payable at twenty-one years of age. We think there is no divesting of such interest. *Storrs v. Benbow*, 3 De Gex., M. & G., 390 ; *Smith* v. *Edwards*, 88 N. York, 92, 109.

4. The $5,000 per year to the children for life, is not *in addition* to the two thirds of the income. Assuming that the death of the last survivor of the children probably will not occur in forty-five years, and that one of the children may not survive the ten years, if the $5,000 is to be in addition to two thirds of the income, it will probably result that the last survivor will have received $175,000 more than will belong to the family of the first child who shall die. We think the true construction of the will, with reference to this $5,000, is that the children take at least $5,000 for life ; after the ten years they take two thirds of the income, which probably will be more than $5,000, but if it should be less than $5,000, they will take at least $5,000, but they do not take $5,000 for life and two thirds of the income.

CARPENTER, J.   The testator's will contains the following articles :—

"*Fourth.*   All the rest and residue of my estate of every kind and wherever situated, I give, devise and bequeath to my wife, Ann Sophia Farnam, and my children, George Bronson Farnam, William Whitmore Farnam, Charles Henry Farnam, Sarah Sheffield Farnam, wife of Eli Whitney, Jr., and Henry Walcott Farnam, and to the survivors and survivor of them, as joint tenants in fee simple, but in trust for the uses and purposes following, to wit :—

"1st.   Out of the net income and profits thereof to pay to my said wife, Ann Sophia Farnam, during her life, the sum of twenty-five thousand dollars annually, in quarterly payments, beginning on the first day of the month next succeeding that of my decease.   This bequest and that

contained in the second article of this will are in lieu of her right of dower in my estate.

"2d.   The said trustees are, out of said net annual income, to pay to each of my children during their lives respectively, the sum of five thousand dollars annually, in quarterly payments, beginning on the first day of the month next succeeding that of my decease.

"3d.   The said trustees are, out of said net annual income, to pay to each of my grandchildren as and when he or she shall arrive at the age of twenty-one years, the sum of five thousand dollars.

"4th.   During the ten years next succeeding my decease, the said trustees shall allow the said net annual income to accumulate (subject always to the payment of said annuities to my said wife, and to my said children, and also to any payments to grandchildren as aforesaid,) and invest the same as part of said trust estate ; and said trustees after the expiration of said ten years shall pay two thirds of the net annual income of said estate, annually, to my children then surviving, in equal proportions ; and if any of my said children shall have then deceased, his or her legal representatives shall be entitled to the share of said annual income that he or she would have been entitled to if living ; and said trustees shall allow the remaining one third of said net annual income to accumulate, and invest the same as part of said trust estate.

"*Fifth.*   At the decease of the last survivor of my said children, if my said wife shall not then be living, but if living, then upon her death, this trust shall cease ; and I give, devise and bequeath all the estate which shall then be held in trust under this will to my grandchildren who shall then be living, to be equally divided among them *per capita* and not *per stirpes*, and to their heirs forever; but if any grandchild of mine shall have died, leaving a child or children surviving at the expiration of said trust, such child or children shall take the share that his, her or their parent would have been entitled to if living ; and if any grandchild of mine shall have died leaving a widow surviving at the expi-

ration of said trust, but leaving no child or children then surviving, such widow shall take one third of the share her husband would have been entitled to if living."

In the construction of this will several questions have arisen. It is claimed by the children of the testator that the fourth and fifth articles are inoperative, or substantially so, for the reason that they are in violation of the statute against perpetuities. This claim, if sustained, requires us to hold—1st, that no estate vests in the grandchildren until the death of the widow and all the children ; and 2d, that it will then vest in a class composed of grandchildren then living and the children and widows of deceased grandchildren. The main question is, whether the estate in the grandchildren is a vested or contingent remainder. We use the terms " vested remainder," and " contingent remainder " as they have been frequently used in this state, as applicable alike to real and personal property. We do not deem it necessary in this case to make any distinction between the two kinds of property.

When, by the terms of this will, does the estate vest in the grandchildren ? At the death of the testator, or at the death of the last survivor of his wife and children ?

We think it vested in point of right on the death of the testator.

That courts will incline in doubtful cases to construe a devise or legacy as vested rather than contingent is a familiar and well settled rule. In some instances courts seem to have gone so far as to say that they will if possible construe it as vested. It is enough for our present purpose to say that we ought to give this will that construction if its language will fairly admit of it.

The bequest is not in terms contingent, nor is it so by necessary implication. That it may be so construed may be conceded. That it will bear a different construction, and that that is the better one, we shall attempt to show.

It will be noticed that the testator, as to the great bulk of his property, separates the legal from the equitable title ; and that separation is to continue until the death of his

widow and children. The naked legal title is vested in trustees; the equitable title to the principal and a large part of the income is vested in no one until the termination of the trust, unless it vests in the grandchildren. The testator has made no other disposition of it. The law will not favor a construction which suspends the title or holds it in abeyance.

That the testator intended that the grandchildren should ultimately have the property cannot be doubted. That he has not expressly postponed the vesting is equally clear. The doubt arises from the use of the word "then," referring to the time when the trust shall cease, in the fifth article :— "I give, devise and bequeath all the estate which shall *then* be held in trust under this will to my grandchildren who shall *then* be living."

It is contended, on the one hand, that the word, as first used, is used to indicate the time when the estate is to vest in point of right; on the other hand it is insisted that it merely indicates the time when it is to vest in possession. It is agreed that it points out the time when the legal and equitable titles merge, and when the estate is to be distributed; and we think it must be conceded that the connection in which it is used does not necessarily require us to say that it is used for the further purpose of indicating the time when the estate vests in point of right. But if it is left in doubt the rule referred to makes it a vested estate.

The word as used in the last clause does not refer to the estate, nor to the time of its vesting, but is used to designate the persons who are to take, and will be further noticed when we consider that branch of the case.

Another rule is, that if the limitation over depends upon an event which is sure to happen, and the persons who are to take can be ascertained during the continuance of the particular estate, the interest is vested. But if it depends upon an event which may or may not happen, or if it is uncertain whether any person will ever be in existence who can take, the estate is contingent.

Mr Redfield states the rule thus :—"From a careful ex-

amination of the subject it will be found, we think, that the question of vesting or remaining contingent depends upon whether the conditions of the intervening estate determining and the estate over taking effect, is one that must happen some time, and so as to give effect at some period to the second estate, or may never happen. If the former, then the second estate in remainder will always be regarded as vested." Redfield on Wills, part 2d, p. 594. Again :— "A conditional bequest is where its taking effect depends upon the happening of some uncertain event." Id., p. 661, citing 2 Wms. on Exrs., 1132, and 1 Roper on Legacies, 605.

The rule thus unqualifiedly stated makes this a vested remainder. The event on which the remainder is to take effect,—the death of all the trustees,—is sure to happen. Assuming that the grandchildren as a class, and they only, take the remainder,—a question we shall hereafter consider, —there is no difficulty in ascertaining at any time who are to take. The remainder is certain to vest at some time and a certain definite class is designated to take. Under these circumstances the law presumes that the testator intended that the remainder should vest presently. There is a present right of future enjoyment whenever the possession becomes vacant; and that right, coupled with the fact that the time for the enjoyment must come, clearly shows a vested interest.

Mr. Jarman's fourteenth rule is as follows:—"That the rule of construction cannot be strained to bring a devise within the rules of law; but it seems that where the will admits of two constructions, that is to be preferred which will render it vested." If this remainder is vested, the statute against perpetuities will not defeat it. Otherwise it may. To defeat this will we are obliged to interpret two of its provisions, concerning which the most that can be said is that they are doubtful and susceptible of a different interpretation, so as to make it invalid. In other words, we are required to give the benefit of all doubts to those attacking the will, and that for the purpose of destroying it.; which is contrary to the rule.

The words, " I give, devise and bequeath," import a present interest unless other provisions in the will clearly manifest a different intention. " When the will imports a present interest in the devisee, it is to be construed so that any condition in the same shall be held subsequent and not precedent." Redfield on Wills, part 2, p. 685.

" The leading inquiry upon which the question of vesting or not vesting turns is, whether the gift is immediate and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving at age or surviving some other person, or the like." *Everitt* v. *Everitt*, 29 N. York, 39.

It cannot be denied that the testator has used language importing an immediate gift in point of right; and we fail to discover in other parts of the will sufficient indications of a contrary intent.

Another rule,—of less weight perhaps, but still worthy of notice,—is, that when the only gift is in a direction to pay at a future time, and the will does not otherwise indicate a present gift, the remainder will generally be regarded as contingent. But where the terms of a bequest import a gift, and *also* a direction to pay at a subsequent time, the legacy vests at the death of the testator and not at the time of payment. *Traver* v. *Schell*, 20 N. York, 89 ; *Manice* v. *Manice*, 43 id., 303. Here are words importing a present gift, and also a direction to distribute at a future time.

Two cases in the state of New York will serve to illustrate and define this rule. One is that of *Warner* v. *Durant*, 76 N. York, 133. In this case the will gave to the executor in trust certain money, with directions to pay to *B* annually the interest on $15,000 at seven per cent., and at the expiration of five years to pay over to *B* the principal sum of $15,000. *B* died before the time fixed for the payment of the principal. The question was whether the legacy vested in *B* during his life. The court say :—" It is a general principle that when the gift is absolute, and the time of payment only postponed, time not being of the substance of the

gift but relating only to the payment, it does not suspend the gift, but merely defers the payment. This principle will not act in this case to vest the legacy; for the gift was not, in the outset, to the legatee; and another rule is to be noticed. It is this:—Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. Here the gift was at first to executors to hold in trust for five years; and at the expiration of that period to pay over to the legatee. But this rule does not act in this case; for there has been a distinction grafted upon it. It is this:—When the gift is to be severed *instanter* from the general estate for the benefit of the legatee, and in the meantime the interest thereof is to be paid to him, that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed." And on that ground it was held that the principal sum of $15,000 was severed from the general estate and vested in the legatee at the death of the testator.

In *Smith* v. *Edwards*, 88 N. York, 92, there were no words in the will importing a present gift,—but the legacy depended entirely upon a direction to the executor to pay over to the legatee a legacy at a future time. It was held that the legacy was contingent and did not vest until the time of payment. The court say:—" Where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. 1 Jarman on Wills, 762. If that rule is arbitrary and inflexible it ends any further argument; for in the present case there was no immediate gift, made in distinct terms, separate and apart from the direction to divide and distribute. But while we have recognized the rule it has been with very important qualifications and exceptions which properly limit its force as a standard of construction. In *Manice* v. *Manice* (43 N. York, 369,) it was said that when the terms of a bequest import a gift, and also a direc-

tion to pay at a subsequent time, the legacy vests and will not lapse by the death of the legatee before the time of payment has arrived. And in *Warner* v. *Durant (supra)* the general rule is declared to have an exception grafted upon it, that where the gift is to be severed *instanter* from the general estate for the benefit of the legatee, and in the meantime the interest is to be paid to him, that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed. The doctrine of these cases confines the rule within the limitation of its precise terms. It applies only where, beyond the direction for future distribution, there are no words and no provisions which import a present or vested gift or indicate such an intent. It does not control where the language of the will, while not expressly saying 'I give and bequeath,' does yet plainly import a present gift intended to vest immediately without reference to the clause of distribution."

*Smith* v. *Edwards* was quoted approvingly by this court in *Wheeler* v. *Fellowes*, 52 Conn., 238; and it is an authority which supports that decision as well as this; for, an examination of the whole will in *Wheeler* v. *Fellowes* reveals this fact, that the gift over, which was held to be void, was found only in the direction to pay or divide at a future time. The question whether other provisions of the will indicated a present gift, and the question whether the remainder was vested or contingent, were not made and were not considered by the court. It was assumed by the counsel and the court that the remainder was contingent.

But we do not propose to decide this question wholly or principally upon legal and artificial rules. Those rules should never control the intention of the testator; they should only be used as aids in discovering that intention. In this as in other cases we should rely mainly on the language of the will itself. In doing so we must consider the terms of the whole will, having due regard to the condition and circumstances of the testator. It is to be observed that it is drawn with great care and technical accuracy.

Taking the whole will together, we think it is reasonably certain that the testator intended that his estate should vest in right, at once, in his grandchildren.

His general scheme is clear. In the first place he made ample provision for his widow; in the second place he made reasonable provision for his children; and in the third place he gave most of his property ultimately to his grandchildren. Secondary and incidental intentions may also be noticed. As to the great bulk of his property he intended to pass by his children—that they should not have the absolute ownership of it. He also intended to keep it together and have it accumulate as long as the rules of law would allow. Perhaps he was ambitious to live in his estate long after his death, and that the estate, when finally distributed, should be a very large one. Whether these purposes were wise or not it is not for us to say.

His disposition of his property seems to be an impartial one. But principally and prominently it appears that his grandchildren were the preferred objects of his bounty. His intention that they should ultimately receive by far the larger portion of his property is unmistakable. That is one of the leading features of the will. Now as a vested interest is better than a contingent one, it will not be presumed that he intended the latter, especially as no one is benefited by it; and if he did so intend, it threatens the practical destruction of the will. Every presumption is in favor of a vested interest; not only so, but the inference to be drawn from the manifest intention of the will points strongly to that conclusion.

Let us now examine the will more in detail.

In the third article he gives, upon the death of his wife, to each of his surviving children, five pictures, and his silverware and plate, and prescribes the method of distribution. His language is:—"Upon the death of my said wife I give and bequeath to each of my three surviving children, &c." Of course no question of perpetuity can arise in respect to these bequests; but the question whether the children took a vested or contingent interest is a perti-

nent one. That they took a vested interest will hardly be doubted. The use of the pictures and silverware is given to the widow during life. The title to the remainder meanwhile is in no one unless it is in the children. It is no part of the trust estate, because it is to be distributed, in all human probability, long before the trust will terminate. As the title must vest in some one, and as the children are ultimately to have it, the law vests it at once in them.

The condition here implied is clearly a condition subsequent. Surviving the widow is not the condition on which the estate vests, but death during her lifetime is the condition on which it divests.

Now the language of the devises and bequests in the fifth article is similar to, and substantially identical with, the language in the third article, and must receive the same construction. If one gives a contingent estate the other does; if one gives a vested interest both do.

The fact that the net income, subject to the annuities, for ten years, and one third of it afterwards, is ultimately given to those who take the remainder, is some evidence that the testator intended a present interest, in analogy to the principle of those cases which hold that payment of the income to the remainder-man during the prior estate, indicates an intention to vest the remainder.

But aside from all collateral and indirect considerations, the language of the fifth article, when properly interpreted, gives a vested interest. "At the decease of the last survivor of my said children, if my said wife shall not then be living, but if living then upon her death, this trust shall cease ; and I give, devise and bequeath all the estate which shall then be held in trust under this will, to my grandchildren who shall then be living, &c."

The grammatical as well as the legal import of the words " I give, devise and bequeath," gives a vested interest. The death of the last survivor of the trustees refers not to the time of vesting but to the time for the trust to cease. The words are not to be carried over so as to qualify the words of the gift. They are not repeated in connection

with the gift, nor even referred to by the use of the adverb *then*, as they might have been—" I *then* give, devise, &c.," but all reference to them is omitted, the sentence is complete, and it conveys to the professional mind a distinct and unequivocal legal meaning, a present gift. Time is in no sense attached to its substance.

Later in the sentence the word *then* is used—"all the estate which shall *then* be held in trust.". But it is there used for the purpose, not of indicating the time when the estate is to vest, but for the purpose of pointing out the subject of the gift. The amount of the trust property is constantly increasing, and the nature and kind of property are liable to frequent changes. The design was to give *now* the property which may *then* exist.

Such changes and accumulations do not affect the *corpus*, so as to prevent the remainder from vesting. They are frequently, we may say generally, incident to trust estates, but they do not affect the title of the remainder.

The word " then " is again used in this connection :—" to my grandchildren who shall *then* be living." It is here used to point out the persons who are to take and not to indicate the time when the estate is to vest.

But it is said that the persons who are to take are the grandchildren then living, and that until that time arrives there is necessarily an uncertainty as to the legatees; and that this uncertainty makes the gift contingent. There would be more force in this reasoning if the testator's intent is to be inferred from this sentence alone. But the testator was careful to explain his meaning, for he adds :—" But if any grandchild of mine shall have died leaving a child or children surviving at the expiration of said trust, such child or children shall take the share that his, her or their parent would have been entitled to if living." And then follows a provision in favor of the widow, if a grandchild died leaving a widow and no children.

Taking the whole article together it is apparent that the testator intended that an interest should vest in each grandchild, and that the distribution should be on that theory.

But it is insisted that if the interest vested it would descend by the statute of distribution to the widows and children, so that there was no occasion for the testator to provide for it; and that the fact that he did so is an indication that the estate does not vest. There is little force in this argument, for it frequently happens that property is disposed of in wills according to the statute. Besides, in this case the statute is not precisely followed; for if there are children the widow is excluded; and if there is a widow and no children, she takes one third instead of one half, as she would by statute.

By "my grandchildren then living" the testator evidently had in mind after-born grandchildren. His reasoning was this—I desire to give this property to my grandchildren; but if I say so, and say no more, it may be claimed that only those now living will take. But I do not mean that, and so for the purpose of including after-born grandchildren I will give it to those then living. He then discovers that the children of deceased grandchildren are excluded, and makes separate provision for them.

Thus it seems quite clear to us that the estate vested in the grandchildren as a class, opening to take in those subsequently born. Each grandchild then living, and each grandchild subsequently born, as he came into being, took an interest in the estate and a right to share in its distribution. That right and that interest can only be defeated by his decease during the continuance of the trust, leaving no widow and no children; and that is clearly a condition subsequent.

We cannot assent to the views urged by the counsel for the children, that there is but one class to take under the final distribution, and that that class is composed of grandchildren then living and children and widows of deceased grandchildren. Assuming all the provisions of the will to be operative, the grandchildren take equal shares *per capita;* all the children of a deceased grandchild, no matter how many, take but one share *per stirpes;* while each widow is entitled only to the fraction of a share. We are unable to

comprehend how all these legatees, of different grades and taking as they do in different proportions, can be regarded as a single class. They are such only in one sense—they constitute all the beneficiaries. But that is not what is meant by a class gift. Ordinarily, a class is where several persons answering the same description sustain the same relation to the legacy.

In this case the whole property is given to the grand-children. One word describes them all. Each takes one equal share in the property; each takes originally, and not by way of substitution or derivatively; and each takes absolutely.

On the contrary, the children of a deceased grandchild are to take contingently; they take derivatively and not primarily; they represent a deceased grandchild and to-gether take but one share; they do not answer the same description; and their relations to the legacy are entirely different. So also with the widows; with this further sug-gestion, that they take severally and not collectively.

It seems to us that the first and primary class consists of grandchildren only. If all should live until the expiration of the trust, as is possible, they will take the whole estate, and great-grandchildren and widows will be excluded. Clearly then all cannot be embraced in one class. Contin-gently great-grandchildren may take, but as they take *per stirpes* they cannot take as one class. There must be as many classes as there are deceased grandchildren leaving children. Each class takes, not directly from the original property, but from a severed portion thereof. Each class therefore is distinct from and independent of the others.

The widows cannot be regarded as a class at all, as each takes independently of the others. They too do not take from the general legacy, the whole trust property, but each shares in a portion of it after it has been severed from the common fund. The share of each grandchild is distinct from the others, and becomes the subject of another divis-ion. Each widow is only interested in one share; she is a stranger to the others. And so the widows and great-grand-

Farnam v. Farnam.

children are to share, not in the original distribution, but in a sub-distribution.

It would seem to follow from these considerations that each class of great-grandchildren must stand by itself, and that the gift to it may or may not be void under the statute against perpetuities; a question we refrain from deciding. Inasmuch as that question has not been fully discussed we think best to leave it to be determined hereafter. We apprehend however that it is not a question of very great practical importance, because the interest being vested in the grandchildren, their children and widows will take under the statute of distribution; and that may be quite as well for all concerned.

We also deem it inexpedient to consider whether this will, or any part of it, is inoperative under the statute of New York. That is a question which must ultimately be determined by the courts of that state.

Another question is, whether in case of the death of a child of the testator at any time within the period of ten years, the annuity of five thousand dollars given to such child would be payable to that child's legal representatives or heirs for the remainder of the ten years, and if so to what representatives?

The language of the second clause of the fourth article, construed by itself, would seem to require a negative answer; but taking it in connection with the other parts of the will we think the answer should be in the affirmative. A leading feature of the will is equality or impartiality. The testator's scheme studiously provides for equality among the children, and also among the grandchildren. If a child dies, leaving children, that equality will be seriously impaired unless the annuity is continued to his heirs.

The children of a deceased child are expressly put in the place of their parent in respect to two thirds of the net income after the expiration of the ten years. It would be strange if he intended that they should be upon a different footing for the time that might elapse between the death of a child and the expiration of the ten years in respect to the annuity.

Again :—The testator, in providing for the accumulation of the net income, has taken pains to say that all the annuities shall first be paid from it. That is some indication that he intended that all the annuities should be paid for the whole period of ten years.

These annuities are manifestly given for present maintenance. We cannot presume that the testator would have deliberately cut off the family of a child from all participation in the estate upon the child's death. He has not done so expressly, and we are not disposed to do so by implication.

We think it may fairly be inferred from the general tenor of the will, considering all its provisions in the light of the attending circumstances, that the testator intended that the annuity should be continued to the heirs of a deceased child; and it seems to follow logically that it should be paid as long as the trust continues.

The gift of two thirds of the net income to each child is in addition to. the annuity. The legacies are distinct, differing in character and amount, and both are given without qualification. Had it been intended that the latter should be substituted for the former, the testator would have said so. Instead of that he has expressly provided that the former, the annuity, shall be for life, and we fail to discover any indications of an intention that it shall cease at the end of ten years. Two different legacies will be presumed to be cumulative in the absence of any direction to the contrary.

The term, " legal representatives," in the fourth clause of the fourth article, is not to be taken in a technical sense. It was obviously the intention of the testator to provide for the family of the deceased child. That intention will be best effectuated by construing the words as meaning the heirs and widow—they being the ones to take under the statute of distribution. Both parties substantially agree in that construction, and the will seems to justify it.

In respect to the last three points considered, the will leaving each of them somewhat in doubt, we have endeavored to follow, as nearly as may be, the statute of distri-

bution, believing that the will will bear that interpretation as well or better than any other, and that it will make the will more harmonious and consistent as a whole.

The Superior Court is advised as follows :—

1. . That the grandchildren take a vested interest in the remainder of the trust property ; and that they take as a class, opening to let in after-born grandchildren, and in case of the death of any one before distribution without children and leaving no widow, his title divests. Consequently no part of the estate is intestate by reason of the statute against perpetuities.

2. We deem it unnecessary now to determine whether great-grandchildren and the widows of grandchildren in any given case can take under the will.

3. We also deem it inexpedient to consider whether any part of the will is rendered inoperative by the laws of New York.

4. The annuity to children is payable to the family of a deceased child during the continuance of the trust.

5. The gift of two thirds of the net income after the first ten years is cumulative.

6. By "legal representatives" is meant those who would take under the statute of distribution.

In this opinion GRANGER and STODDARD, Js., concurred.

PARK, C. J. (dissenting).—I cannot concur in the views expressed by the majority of the court in regard to the disposition of the principal of the estate contained in the fifth clause of the will in question. The majority hold that the principal vested by right in the grandchildren of the testator, as a class, at the time of the testator's death.

I think no estate in the principal could vest by the terms of the will before the death of the last survivor of the testator's children, and, if Mrs. Farnam should then be living, not before her death.

Although the testator had nearly two million dollars of property to bequeath to his wife, children and grand-

children, still, not contented with dividing this enormous estate among them, he conceived and cherished the scheme of doubling the amount before any disposition of the principal should be made. This he sought to accomplish after his death by adding to the principal of his estate a large proportion of its yearly income till the death of the last survivor of his wife and children.

The testator was in the seventy-ninth year of his age when the will was made. He had five children then living, the eldest of whom was forty-one, and the youngest twenty-nine. It was highly probable, almost certain, that some one of them would live to be as old as himself—would live at least forty years after his death.

Such being the case, the testator must have expected that his great estate would, and therefore intended that it should, accumulate forty years at least before the time would arrive for the termination of the trust, and before the words "I give, devise and bequeath all the estate which shall then be held in trust under this will to my grandchildren who shall then be living," would take effect.

I am wholly unable to see how it is possible for these words to convey, at the death of the testator, the beneficial interest in the principal of the estate, as the majority of the court hold. It seems to me the testator labored to make it clear beyond the possibility of a doubt, that the time when the bequest would take effect was when the trust should terminate at the death of the last survivor of his wife and children. Up to this time he had devised and bequeathed the legal estate in fee simple to his trustees by a previous clause in the will, and now, on the death of "the last survivor," &c., he declares that the legal estate in fee simple which he had transferred to the trustees shall terminate, and then he devises and bequeaths the entire estate, legal and equitable, in fee simple to his grandchildren who shall then be living, &c.

For greater precision and seemingly to put the matter beyond all doubt, he repeats the word *then* or its equiva lent a number of times. " At the decease, &c., this

trust shall cease "; "at the decease, &c., I give." The word *and*, between *cease* and *give*, is used to supply the words "at the decease, &c.," and save a repetition of them. "And" always signifies an addition to what precedes. The testator says "At the decease of the last survivor, &c., this trust shall cease." But this is not all that shall then take place. The testator goes on to say "and" (that is, in addition to my putting an end to the trust,) "I give," &c. Hence, if we supply in words all that is understood by the word "then" and its equivalent, we shall have in the sentence expressing the gift the following: "At the decease, &c., this trust shall cease; at the decease, &c., I give all the estate, which at the decease, &c., shall be held in trust under this will, to my grandchildren who shall, at the decease, &c., be living..

And further, by the terms of the will manifestly the legal estate in the trustees did not pass, and could not have passed, to the grandchildren on the death of the testator. This is conceded. And it must further be conceded that on "the death of the last survivor," &c., it will, for the first time, pass to the grandchildren then living, by the words "I give, devise and bequeath." These are the only words in the will that make any disposition of the principal estate to the grandchildren. And here they carry the entire estate in fee simple to such of the grandchildren as shall then be living, and to the living issue of those who shall then be dead. Is it possible that these words had the effect to transfer the equitable interest in the principal estate to the grandchildren on the death of the testator, when here, forty or fifty years afterwards, the same estate is clearly and unmistakably transferred to them, together with the legal estate?

Again, the testator, in the fifth clause of the will, places himself at the death bed of the last survivor of his wife and children, and upon his or her death declares that all the object he had in view in trusteeing his property, in order that he might transmit to his descendants an enormous estate, has now been accomplished. He has no more need

of trustees, and therefore he says "the trust shall cease, and I give, devise and bequeath all the estate" now held by the trustees, to my grandchildren now living, "and to their heirs forever." He at that time, in legal contemplation, uttered the words of gift.

Again, the article we are considering goes on to say—"but if any grandchild of mine shall have died, leaving a child or children surviving at the expiration of said trust, such child or children shall take the share that his, her or their parent would have been entitled to if living."

"Would have been entitled to if living" presupposes that his, her or their parent had never been entitled to *the share*, owing to his death before the time when the shares are given by the will. These words show clearly that the testator never supposed that he had given to his grandchildren a vested interest in his estate which would take effect at the time of his death. And, indeed, so to do might be ruinous to the scheme the testator had in view in trusteeing his property, which was, as we have seen, to transmit to his descendants a vast estate. A vested interest in the grandchildren could be alienated or attached for debt, and it might be that when the vast estate, with all its accumulations for many years, should be ready for distribution in the far future, strangers to the blood of the testator might come in and claim it. The testator had fourteen grandchildren living at the time of his death, the eldest of whom was but eleven years of age. During the forty or fifty years that the trusteeship in all probability would have to continue, their number would be doubled or trebled, while death in the meantime would remove some of them, and they would wait with great impatience for the time to arrive when they should come into possession of their estates; and many of them would become discouraged and sell their interests at any price for ready money, preferring to do so rather than wait till old age to get more, and in the mean time run their chances of dying and getting nothing. It would seem therefore that, to carry out the scheme of the testator to a successful termination, it

was necessary to give to the grandchildren only a contingent interest, incapable of vesting. This the testator must have known, and in the making of his will acted with reference to it accordingly.

But it seems to me clear, from the language of the bequest, that the interests of the grandchildren in the principal estate of the testator are merely contingent. Their interests depend altogether upon the uncertain event of their being alive at the death of the last survivor. The gift is only to grandchildren *then* living. To be then living is essential to the right to receive any of the estate. It is a condition precedent. It distinguishes the grandchildren who will take from those who will not take. As well might a child of *A* claim a bequest made to a child of *B*, as for a grandchild to claim under this bequest who was not then living. If the testator had said—" At the death of the last survivor of my wife and children I give, devise and bequeath all my estate to my grandchildren," and had stopped there, then, inasmuch as the description would apply to all the grandchildren, and the event on the happening of which they were to take was certain to occur at some time, it might be said that the grandchildren took vested interests in the principal estate at the death of the testator. The distinction between a vested and contingent interest is this. If the event is certain to happen on which the interest is made to depend, and the taker is certain, the interest is vested. But if the event is uncertain ever to occur, or the person to take is uncertain, then in either case the interest is contingent. This distinction is clearly stated in *Alfred* v. *Marks*, 49 Conn., 473.

It seems to me that here lies the error in the opinion given by the majority of the court. They treat the case as though there was no uncertainty in the persons to take, whereas the will leaves it wholly uncertain who will take the estate at the death of the last survivor, &c.

The fifth clause of the will provides as follows with regard to the children of the grandchildren:—" If any grandchild of mine shall have died leaving a child or children

surviving at the expiration of said trust, such child or children shall take the share that his, her or their parent would have been entitled to if living." Here the will gives the share that would have come to the deceased parent, had he been living at the death of the last survivor, &c., directly to the child or children of such parent. The child or children take as purchasers, as much so as though they were the child or children of strangers. The phrase, "such child or children shall take the share that his, her or their parent would have been entitled to if living," was used merely as descriptive of the interest they would take directly from the will as purchasers. They inherit nothing from their parent. He had nothing for them to inherit. This position does not admit of a question. Now, let us take the case of one grandchild, which will illustrate many cases that may occur. *A* was born not long after the death of the testator. He grows up, marries, and has a child *B*. *B* grows up, marries, and has a child *C*. Thus three generations come into being after the death of the testator and before the death of the last survivor, &c. They are all living. Who can tell to which of them the bequest will carry a portion of the principal estate, if eventually it will carry any to either of them? Manifestly it is all uncertain by the terms of the will whether either of them will take; much more which of them, if either. If *A* happens to be alive at the death of the last survivor, &c., he will take. If *A* is not then alive, but *B* is, *B* will take. If *A* and *B* are both dead, but *C* is then living, *C* will take. If all are then dead, none will take. It is the uncertainty of the taker that makes the interest in the grandchildren merely contingent;—contingent from the death of the testator to the death of the last survivor, &c., when it will become vested in parties unascertainable before the time arrives.

It seems to me that this view of the case is fully supported by the authorities in this state and elsewhere. In the case of *Alfred* v. *Marks*, 49 Conn., 473, a devise was made to *M.* in-fee, coupled with a proviso that if he should die without children a portion of the property should go to

the heirs of *W.* It was held that the heirs of *W.* took only a contingent interest. In the case of *Bristol* v. *Atwater*, 50 Conn., 404, an estate was left in trust for Mrs. Denman, remainder to her children in fee; but if she should leave no children, then the estate was given to the other children of the testator in equal shares or to their issue, the children of such as were deceased, whether of children or grandchildren, to take the share which their deceased parent would have had. It was held that the interest in the other children of the testator was contingent till the death of Mrs. Denman. This case seems decisive of the one in question.

In the case of *Wheeler* v. *Fellowes*, 52 Conn., 238, the testator gave his property to executors in trust for the payment of the income to his children during their lives, and when the youngest of the testator's grandchildren should arrive at the age of eighteen years the principal of the trust estate was to be divided in fee equally among the grandchildren, "and if any of them shall have deceased leaving children or other descendants, then such children or other descendants shall take the share that would have belonged to his or her deceased parent or ancestor, had he or she then been living." The court held that the interest in the grandchildren or other descendants was contingent till the youngest grandchild should arrive at eighteen years of age. This case is strikingly like the one under consideration.

In the case of *Brown* v. *Williams*, 5 R. Isl., 309, the devise was to trustees for the use of the testator's daughter *M.* for life, remainder to her issue, and if she died leaving no issue, then as follows:—" I give and devise the aforesaid described lands and premises to the children of my daughter *A.*, not only those who are now born but also those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children that shall be alive at the time of my daughter *M.'s* decease; the children of a deceased child to take the same share their parent, if living, would have taken, the which I do

hereby give to them, their heirs and assigns forever." The court held that the interest of the children of *A.* and their issue was contingent till the death of *M.* This case is another strikingly like the one in question.

In the case of *Thomson* v. *Ludington,* 104 Mass., 193, a testator by will gave his estate to his 'widow during her life or widowhood, and at her decease or marriage to such of his children as should then be living, share and share alike, to them and their heirs forever. One of the daughters of the testator survived him, but died before the death or marriage of the widow, leaving a son born in the life time of the testator. The court held that the deceased daughter of the testator had only a contingent interest that could not be inherited by the son.

In the case of *Hall* v. *Hall,* 123 Mass., 120, a testator, whose daughter and her children survived him, by his will bequeathed a certain sum in trust to accumulate till his grandchildren respectively should attain the age of thirty-five years, when a proportionate part of the fund and accumulation, divided by the number of grandchildren then living, should be paid over to each of them. It was held by the court that under this bequest the grandchildren of the testator took only contingent interests, which could not vest till the grandchildren respectively arrived at the age of thirty-five years.

In the case of *Colby* v. *Duncan,* 139 Mass., 398, the testator, after making several bequests, gave the income of the remainder of his estate to his wife during her life ; the will then proceeding as follows :—" And after the decease of my said wife I give, devise and bequeath all my estate, real, personal and mixed, to my children who may then be living, in equal shares; and in case either of them shall have died, leaving legal heirs, then such heirs shall be entitled to the share which their deceased father or mother would have been entitled to if living; to hold to them and their respective heirs and assigns forever." The court held that the interest of the children of the testator during the life of the wife was merely contingent. Judge ALLEN, in

giving the opinion of the court, said:—"The devise is clearly limited to the children who may be living at the decease of the testator's wife, and until that event happens it cannot be ascertained who will take." This case, in all essential particulars, is like the one under consideration.

I think the interest the grandchildren have in the principal estate of the testator is merely contingent; and, if so, then it is clear that the disposition the testator attempted to make of it is void by the statute against perpetuities. This the majority of the court concede, and the question is too clear for discussion.

In this opinion LOOMIS, J., concurred.