JOHN NICOLL, TRUSTEE, vs. ALTHEA G. IRBY, EXECU-
TRIX, ET ALS.

\* First Judicial District, Hartford, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Having given a life estate in the residue of his property to his brother
W, who was his next of kin and who had married a widow with
two children, and the remainder in fee to any children begotten
by W who might survive him, the testator provided that if W died
"without children, heirs of his own body," the remainder should
go to "my own heirs" in equal shares, and that no adopted child
should receive anything under his will. W survived the testator
and died leaving his widow and her two children but no child be-
gotten by him. In a suit to construe the will it was held:—
1. That the testator's "own heirs" were to be determined as of the
date of his death, rather than at the death of W, since the latter
construction would offend the statute against perpetuities which
was in force when the testator died and make the residue of his
property intestate estate in opposition to the testator's presumed
intent.
2. That it was quite apparent from the language of the will, when read
in the light of the surrounding circumstances, that the testator
did not intend to give to W anything more than a life estate, and
that in designating his "own heirs" as the persons who should
take the remainder at W's death, he had in mind his next of kin
exclusive of W; and that the latter were therefore entitled to the
residue of the estate in equal shares.
If a testamentary provision is fairly open to two constructions, one of
which will render the bequest illegal and the other valid and opera-
tive, the latter construction is to be preferred.
The word "heirs," in its primary sense, designates those persons who,

---

\* See note on page 531.

Nicoll *v.* Irby.

. in the absence of a will, are by law entitled to inherit the real estate of a decedent.

The presumption that a testator used language in its legal sense is overthrown if it clearly appears that his intent will not be effectuated by so interpreting it, and that he attached a different meaning to the words which he employed.

The cases of *Rand* v. *Butler*, 48 Conn. 293, and *Thomas* v. *Castle*, 76 Conn. 447, distinguished.

* Argued October 5th—decided November 1st, 1910.

SUIT to determine the validity and construction of the will of John E. Law of Cheshire, deceased, brought to and reserved by the Superior Court in New Haven County, *Williams, J.*, upon the facts stated in the complaint, for the advice of this court.

*James K. Blake,* for the plaintiff.

*Clarence Bishop Smith* of New York, for William H. Eliot *et als.*

*Edward H. Rogers,* with whom was *Alfred N. Wheeler,* for Althea G. Irby, executrix.

THAYER, J. The testator, John E. Law, died at Cheshire in September, 1885. His will, dated January 29th, 1883, was admitted to probate in October, 1885. All of the testator's property is by the will given to trustees, in trust, to expend annually from the income thereof $50 in caring for the town burying-ground in

---

* Some time after the argument of this case at the June Term, 1910, in New Haven, it was remanded for the purpose of citing in additional parties, and came again before the court at its October Term, 1910, in the first judicial district, to which it was transferred by consent. The main record and the briefs will be found in the volume of *Records and Briefs* for the June Term, 1910, in the third judicial district, and the supplementary record in the volume for the October Term, 1910, in the same district. *Reporter.*

Cheshire, "attention being first given to the lot or lots
in said burial ground wherein my ancestors, Father,
Grandfather & etc. lie buried," and to apply all the
remaining income of the estate to the support and
maintenance of the testator's brother, William Law,
so long as he shall live, and after his death to the sup-
port and maintenance of any children, heirs of his own
body, who shall survive him, till the youngest of such
surviving children shall attain the age of thirty years,
when the trust is to cease, and the trustees are directed
to pay over to said surviving children of William all of
the estate with the exception of $1,000, which they are
to pay to the burial-ground trustees of the town of
Cheshire. The will then provides as follows: "In the
event of the death of my brother, without children,
heirs of his own body, then the trustees aforementioned
are directed to immediately pay over to my own heirs,
share and share alike, all the property belonging to my
estate and remaining in their hands, except the sum of
$1,000 which said sum they shall pay over to the burial
ground trustees. . . . It is my will that no adopted
child shall receive aught under this will."

The brother, William Law, survived the testator,
and died in 1909, leaving no children, heirs of his body,
surviving him. He had married a widow with two
children prior to the execution of his brother's will, and
they were living with him at the date of its execution
and at the time of the testator's death. The stepchil-
dren were never legally adopted by said William Law.
Both survived him, and are the sole beneficiaries of
his will, of which one of said stepchildren, the defend-
ant Althea G. Irby, is sole executrix. William Law was
the next of kin and only heir at law of the testator,
John E. Law, at the date of the latter's death. Those
persons who would have been the next of kin and his
heirs at law, if the brother William had not been living,

were first cousins, all of whom are now dead. Their representatives are made parties to this action.

The income of the estate was paid to William, according to the terms of the will, during his life, and at his death the trustee paid to the trustees of the Cheshire burial-ground $1,000 from the principal of the estate. The questions raised in the case relate only to the remainder in the balance of the estate now in the hands of the trustee.

The main question discussed by the parties who contest the case is whether the remainder in the principal of the estate, subject to William's life estate and the payment of the $1,000 to the trustees of the Cheshire burying-ground, was, by the provision of the will above quoted, vested at the testator's death in William Law as the next of kin and heir at law of the testator, or vested in those persons who at the testator's death would have been his heirs at law had William not then been living.

The trustee in his complaint raises another question, namely, whether it was not the testator's intention, by the provision in question, to give this remainder to those persons who at William's death were the testator's next of kin and heirs at law. We think that such was not the testator's intention. Under such a construction of the will it would be possible for the children or descendants of persons born after the testator's death to take the remainder. A construction making such a result possible would render the provision in question obnoxious to the statute of perpetuities which was in force at the time the will was made and at the testator's death, and the provision would be void, and the remainder would be intestate estate. *Harmon* v. *Harmon,* 80 Conn. 44, 46, 66 Atl. 771; *Gerard* v. *Ives,* 78 Conn. 485, 489, 62 Atl. 607. The language is entirely consistent with an intent that the heirs shall be determined

as of the date of the testator's death. Such a construction makes the provision valid, and the entire estate testate, which is presumed to have been the testator's intention. If the provision is fairly open to the two constructions, the latter, which renders the bequest valid, is to be preferred to the former, which turns it into an illegal perpetuity. *Woodruff* v. *Marsh,* 63 Conn. 125, 136, 26 Atl. 846; *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645.

Whether the remainder passed to William, the life tenant, or to those who, had he not been living at the testator's death, would have been the latter's heirs, depends upon the sense in which the testator used the expression "my own heirs," in the provision in question. The word "heirs," in its primary meaning, designates those who in the absence of a will are by law entitled to inherit the real estate of a deceased person. *Perry* v. *Bulkley,* 82 Conn. 158, 168, 72 Atl. 1014. When the word is used in a will to point out legatees or devisees, its primary meaning is to be given to it unless it clearly appears that the testator used it in a different sense. *Gerard* v. *Ives,* 78 Conn. 485, 489, 62 Atl. 607. But the presumption that a testator used language in its usual and legal sense, will be overthrown when an examination of the instrument, in the light of the surrounding circumstances, clearly shows that the intent of the testator will not be effectuated by so interpreting it, and that the language was used in another sense. *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645. The brother, William, satisfies the designation of heir of the testator, using the word in its primary signification. But we think that, looking at the whole instrument in the light of the surrounding circumstances, it clearly appears that the testator did not intend to vest the remainder of the estate in his brother, the life tenant, when he designated his own

heirs as the ones to whom the remainder should be paid over.

It is clear from the will and circumstances surrounding the making of it, that the purpose of the provision in question was not to confer upon William any beneficial estate, but to dispose of the remainder in the contingency that William left no children of his own blood. A life estate in the property was already in William under other provisions of the will. The gift of a remainder dependent upon a contingency which must continue until his own death could be of no personal benefit to him. The effect of such a gift would be simply to make the estate in remainder transmissible through him at his death, either by will or descent. The testator is presumed to have known this, and to have known that, if the remainder was given to his brother, it would pass at once, upon the termination of the life estate at his death, to his heirs, natural or instituted, and that he would thus be enabled by making a will in favor of his stepchildren, or, by legally adopting them, to transmit the entire estate to them. Had it been the testator's purpose to have the estate at his brother's death go to his brother's heirs, legal or testamentary, the natural way to have accomplished it would have been to provide that, failing children of William's own blood, the remainder should at his death be paid over to his heirs or to such persons as he should by will appoint to take it. Instead of this, he directed that at William's death, without leaving children, heirs of his own body, the remainder should be immediately paid over to his own heirs, share and share alike. The language used assumes that the heirs designated will or may be in existence at the time the payment is to be made, but it provides that it shall be made at William's death, which indicates that in the mind of the testator William is excluded from the heirs who are to

take. The use of the plural, heirs, and the provision that they are to share alike, indicates that other heirs than William were in the mind of the testator as beneficiaries under this provision of the will. These considerations alone might not be sufficient to warrant the implication that the testator, in giving the life estate to his brother and remainder to his own heirs, intended to exclude his brother from the heirs who were to take. In *Rand* v. *Butler*, 48 Conn. 293, and *Thomas* v. *Castle*, 76 Conn. 447, 56 Atl. 864, we held that, under similar provisions, the sole heir at law, who, as in this case, was given the life estate, was not excluded from taking the remainder as sole heir, although it was given to the testator's heirs. No facts appear in either of those cases which suggest any reason why the testator should be unwilling that the remainder estate should go to the life tenant's natural heirs, or to those whom he might make his heirs by will. In the present case the testator's brother had two stepchildren living with him whom it was probable that, in case he had no children of his own, he might wish to make, and whom he in fact afterward did make, his heirs. The whole will shows a clear intent to give this brother a life estate in practically all of the testator's estate, and, if he left children of his own blood, to give the remainder to them. The intent is equally clear that the stepchildren, even though adopted, shall not take. The testator intended that the estate should be enjoyed by those of his own blood. In three places in the will, when speaking of his brother's children who are to take, the testator describes them as William's "children, heirs of his own body." Later in the instrument he declares it to be his will that no adopted child shall take anything under it. There can be no doubt that these provisions were made to guard against the stepchildren of William taking anything under

the will, and it is incredible that, having taken such precautions against their taking anything under his own will, he should by that instrument place it in the power of William to transmit the entire estate to them by his will or by legally adopting them.

It is clear that he intended to give William no greater estate or interest in the property than a life estate, and that by his "own heirs" he intended his next of kin exclusive of William.

The Superior Court is advised that the first, third, and fourth questions upon which its advice is asked by the trustee should be answered in the negative, and that the second question should be answered in the affirmative. As to the sixth question, the trustee should be advised that one sixth of the estate now in his hands should go to the executor or administrator of each of the first cousins named in paragraph thirteen of the complaint.

No costs will be taxed in this court.

In this opinion the other judges concurred.