WILLIAM H. ALLEN ET AL., TRUSTEES, *vs.* JOHN T. ALMY, EXECUTOR, ET ALS.

Second Judicial District, Norwich, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A testator, who died in 1888, gave the residue of his property to trustees, who were directed to pay over the net income of a certain proportion thereof to a daughter *F* during her life, and at her decease to "pay over and deliver" the same to her issue, if she should leave any, and if not, to the testator's "heirs at law exclusive of my said daughter." Similar provision was made, and in the same language, for another daughter and for two sons. *F* died in 1912 without

Allen v. Almy.

issue, and in a suit to determine the disposition of this portion of the trust fund, which comprised money and securities amounting to about $200,000, it was *held:*—

1. That the direction to the trustees "to pay over and deliver" the property imported a gift of the principal itself.

2. That the "heirs at law" designated by the testator as the recipients of the gift over, in case *F* should die without issue, were those who stood in that relation to him at his death, viz, his children.

3. That the limitation over created a vested interest in each of the children other than *F*, and that this interest was alienable and transmissible by inheritance, though the right to enjoy the property was postponed and might have been entirely defeated had *F* died leaving issue.

4. That such a limitation over was not in contravention of the statute against perpetuities which was in force in 1888.

5. That while the gift over to the heirs at law was one to a class, in the sense that it was one to a group of persons designated not by name but by a general descriptive term, the members of the class nevertheless took as tenants in common, and not as joint tenants with the right of survivorship.

The law of this State, unlike the common law, prefers a tenancy in common to a joint tenancy; and this difference may lead to important consequences in the construction of wills or grants where gifts are made to several persons or to a class without any, or at least with only doubtful, indication of the nature of the estate intended to be created. Under the common law the prima facie presumption would be that the donees took as joint tenants, while under ours that they took as tenants in common.

The law favors vested estates.

A construction which will render a bequest valid and operative is to be preferred to one which makes it illegal, if the language is fairly susceptible to either interpretation.

The word "heirs" in its primary meaning designates those who, in the absence of a will, are by law entitled to inherit the real estate of a decedent; and it will be construed accordingly unless the will indicates that it was used by the testator to signify some one else.

Argued October 21st—decided December 20th, 1913.

Suit to determine the validity and construction of certain provisions in the will of Lorenzo Blackstone of Norwich, deceased, brought to and reserved by the Superior Court in New London County, *Shumway, J.*, upon the facts alleged in the complaint, for the advice of this court.

Lorenzo Blackstone, late of Norwich, died in 1888, leaving a widow and five children, to wit, J. DeTrafford, William N., Louis L., Frances E., married to Frederick J. Huntington, and Harriet, married to Frederick S. Camp.

By his will he disposed of all the residue and remainder of his estate, after the satisfaction of certain bequests and legacies, and subject to a trust for the life use of his widow in one third thereof, by directing its division into eighteen equal parts or shares, and disposing of those parts. Four of them he gave absolutely to his son William, one to DeTrafford, two to Louis, and one and one half parts to Mrs. Camp. The remaining parts were given to trustees to hold, three of them for the life use of DeTrafford, two of them for the life use of Louis, one and one half of them for the life use of Mrs. Camp, and three of them for the life use of Mrs. Huntington, with a limitation over in each case. The testator dealt with the one third in which his widow was given a life interest in a different paragraph of the will from that in which he disposed of the two thirds in which such life use was not reserved; but the practical effect was as stated.

The language defining the trust and the limitation over was in each instance the same. That which related to the share left for the life benefit of Mrs. Huntington reads as follows: "To said Edward N. Gibbs and George D. Coit, three of said shares, in trust, to receive and hold the same, and to pay over the net income arising therefrom, after deducting legal costs and charges from time to time, to my daughter Frances E. Blackstone, during her life, and at her decease to pay over and deliver the same to her issue; but in case of her death leaving no issue surviving her, then to my heirs at law exclusive of my said daughter."

The widow died in 1896. DeTrafford died in 1898,

leaving a widow, now deceased, and one son, who died in 1905, without issue. William died in 1907, leaving a widow, now living, but no issue. Louis died in 1892, leaving two children, now living. Mrs. Huntington died January 13th, 1912, leaving a husband, but no issue. Executors of the wills or administrators upon the estates of all of these deceased children of the testator and of the testator himself are parties to this action. Mrs. Camp survives, as do her three children.

The estate in the hands of the trustees forming the trust fund created by the will for the benefit of Mrs. Huntington consists of about $200,000 in money and securities. It is this fund which is the subject-matter of this action. The Superior Court is asked to give its advice in answer to the following questions relating to its disposition: "1. To whom and in what amounts shall the present trustees pay over said trust funds? 2. What is the meaning of the expression 'heirs at law' in the provision relating to the final disposition of said trust funds after the death of said Frances E. Blackstone without issue, and are the persons thus described the heirs at law of the testator at his decease or at the decease of the cestui que trust? 3. Can this expression 'heirs at law' in this connection be construed as meaning children and if so is the reference to children living at the time of the testator's death or at the decease of the cestui que trust? 4. In the attempted final disposition of the principal of the several trust funds left for the benefit, during life, of the children of the testator, to wit: J. DeTrafford Blackstone, Louis L. Blackstone, Hattie B. Camp and Frances E. Blackstone, upon their decease, without issue, is there a violation of the statute against perpetuities existing at the time of the testator's death and if so to whom are said funds of the trust created for the benefit of the said Frances E. Blackstone now payable?"

Certain of the parties contend that the gift over "to my heirs at law" exclusive of "my said daughter" is void as contravening the statute against perpetuities, and that the remainder thus attempted to be disposed of is intestate estate of the testator.

The children of Louis contend that the limitation over is to the heirs at law of the testator to be determined as of the time of Mrs. Huntington's death, and that such disposition was not repugnant to the statute against perpetuities properly construed. The claim in their behalf is that they are, between them, entitled to one half of the fund, and Mrs. Camp to the other half.

The representatives of Mrs. Huntington's deceased brothers claim that the gift over is a valid one to the heirs at law of the testator to be determined as of the time of his death, and that the estate of each of the deceased brothers is entitled to one fourth of the fund, Mrs. Camp being entitled to the remaining one fourth.

Mrs. Camp concurs with the representatives of her deceased brothers in claiming that the limitation over was not in contravention of the statute for the reasons urged by them, but says that it was a gift to a class with the incident of survivorship, so that she, as the sole survivor of the class, is entitled to receive the whole fund.

*Wallace S. Allis*, for the plaintiffs.

*Morris W. Seymour*, for estate of Ella B. Huntington *et al.*

*Edmund W. Perkins*, for Justine B. Perkins *et al.*

*Charles E. Searls*, for John T. Almy, executor, *et als.*

*William Waldo Hyde*, with whom was *Jeremiah J. Desmond*, for Harriet B. Camp.

PRENTICE, C. J. "The law favors vested estates." *Connecticut Trust & Safe Deposit Co.* v. *Hollister*, 74 Conn. 228, 231, 50 Atl. 750; *Carpenter* v. *Perkins*, 83 Conn. 11, 17, 74 Atl. 1062. "If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it will be valid and operative, the latter mode must be preferred." *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957. "The word 'heirs,' in its primary meaning, designates those who in the absence of a will are by law entitled to inherit the real estate of a deceased." *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957; *Perry* v. *Bulkley*, 82 Conn. 158, 168, 72 Atl. 1014. "This is the meaning which is to be given to it in the construction and interpretation of wills, unless, when read in the light of the circumstances surrounding the testator, it clearly appears from the will itself that he used the words in a different meaning." *Hartford Trust Co.* v. *Purdue*, 84 Conn. 256, 258, 79 Atl. 581; *Wilde* v. *Bell*, 86 Conn. 610, 614, 87 Atl. 8. This is the rule of general recognition. Gardner, in his work on Wills, p. 447, states the pertinent phase of it as follows: "Where the limitation over is to the heirs of the testator, this class is determined as of the death of the testator, in the absence of a testamentary intent to the contrary." To the same effect, see Page on Wills, § 547. We adopted and applied this principle in *Johnson* v. *Webber*, 65 Conn. 501, 512, 33 Atl. 506.

This will furnishes no indication that the testator used the words "my heirs at law" in any other than their usual and normal signification. The only side light thrown upon the subject is that drawn from the

provision in connection with each of the limitations over, which excludes from the class entitled to share in the remainder the child who had enjoyed the life use. Evidently those whom he had described as his heirs at law in this connection were represented in his mind by the group as it should be when he should die—children presumably—and not by some group of uncertain size and membership which might be formed in the years during which some one of his children might be expected to live.

These recognized principles and conditions lead inevitably to the conclusion that the heirs at law designated by the testator as the recipients of the gift over in the event that Mrs. Huntington should die without issue were those who stood in that relation to him at his death, to wit, his five children. The language of the will, that the property should be paid over and delivered, imports a gift. *Angus* v. *Noble*, 73 Conn. 56, 64, 46 Atl. 278; *Johnson* v. *Webber*, 65 Conn. 501, 513, 33 Atl. 506.

The limitation over to them and each of them created a vested interest in the sense that each took an estate which was alienable and transmissible by inheritance. It does not militate against this result that the vesting in enjoyment was postponed to some uncertain and future time, or that such vesting might be entirely defeated by the happening of the event that Mrs. Huntington should die leaving issue. The limitation over was one with a double aspect. *Thomas* v. *Castle*, 76 Conn. 447, 451, 56 Atl. 854; *Sumner* v. *Westcott*, 86 Conn. 217, 220, 84 Atl. 921. The donees of the remainder, in the event of the life tenant's death without issue, took a vested interest, defeasible in the contingency named. *Ingersoll* v. *Ingersoll*, 77 Conn. 408, 410, 59 Atl. 413; *Perry* v. *Bulkley*, 82 Conn. 158, 169, 72 Atl. 1014; *Carpenter* v. *Perkins*, 83 Conn. 11, 17, 74

Atl. 1062; *Sumner* v. *Westcott,* 86 Conn. 217, 220, 84 Atl. 921.

Testamentary provisions creating such limitations over vesting in interest immediately upon the death of the testator are not in contravention of the statute against perpetuities. See cases last cited.

The gift over to the heirs at law was one to a class in the sense that it was one to a group of persons designated, not by name, but by some general descriptive term. Mrs. Camp reasons from this that the members of the group or class took as joint tenants, and therefore with the incident of survivorship attached to their estates. This contention assumes two aspects, one as to the nature of the estate which vested in the heirs, and the other as to the incidents of that estate if found to be that of a joint tenancy.

Our law prefers a tenancy in common to a joint tenancy. *Bill* v. *Payne,* 62 Conn. 140, 142, 25 Atl. 354. In this respect we differ from the common law which favored joint tenancies. 2 Blackstone's Commentaries, 193. "There may be joint tenancies in this State, but survivorship as an incident thereto has never been recognized here. There is here practically no difference between a joint tenancy and a tenancy in common. Each tenant is seized of an undivided share of the whole, proportioned to the number of tenants, as was the case at common law in tenancies in common. But at the common law, in the case of a joint tenancy, each tenant is seized of the whole as well as of every part—*per my et per tout*—and it is to this seizin by each of the entirety that the incident of survivorship is due. Upon the death of one, the other or others remain seized of the whole. In this State, therefore, there can be no joint tenancy with the right of survivorship, unless such right is created by the will or other conveyance creating the tenancy. Whether it can be so created, we need not

in this case inquire." *Houghton* v. *Brantingham*, 86 Conn. 630, 636, 86 Atl. 664. As far back as 1769 the common-law doctrine of survivorship as between joint tenants was repudiated in this State. *Phelps* v. *Jepson*, 1 Root, 48.

The difference in the degree of favor with which joint tenancies and tenancies in common were recognized at common law, and are recognized with us, is one which carries with it important consequences in the determination of the character of the estate created where grants or gifts are made to several persons or to a class without other indication, or with only doubtful indication of the nature of the estate intended to be created. In the one case the presumption, in the absence of explanatory language manifesting the intent, would be naturally and logically in favor of joint tenancies, and in the other in favor of tenancies in common. And so we find that, while the rule of the common law was that a grant or gift to a class imported prima facie that it was to the members of the class as joint tenants, that principle, in those jurisdictions where, as with us, tenancies in common are favored, is reversed, and the presumption is one in favor of tenancies in common. The gift or grant will, in other words, be construed as creating a tenancy in common, unless a different intention on the part of the grantor or testator appears by the instrument of conveyance or will. 2 Underhill on Wills, § 539. The intention, however, if discoverable, will, of course, govern.

In the present instance there is nothing, either in the context, the nature of the gift, or the circumstances, to overcome the presumption that the heirs at law took as tenants in common. On the contrary, it is scarcely conceivable that the testator intended any other result from his gift than that his heirs at law, exclusive of the child benefited by the life use, should take the estate to

be at once divided between them.   It is plain that the testator had no thought of providing for anything save an ownership in severalty through a distribution made immediately upon the vesting in possession and enjoyment of the remainder over to the heirs at law.   Provisions looking to a division have always, even under the common-law rule, been regarded as sufficient to create a tenancy in common.   *Perkins* v. *Baynton,* 1 Brown Ch. 118; *Stones* v. *Heurtly,* 1 Ves. Sr. 165, 166; *Delafield* v. *Shipman,* 103 N. Y. 463, 9 N. E. 184; *Griswold* v. *Johnson,* 5 Conn. 363, 366.

As there is nothing in the will to create a joint tenancy in the heirs of the testator, we have no occasion to consider, further than we have already incidentally done, the claimed incident of survivorship.

The Superior Court is advised that by the expression "heirs at law," as used in the provision relating to the final disposition, upon the death of Frances E. Blackstone without issue, of the trust estate held for her benefit during her life, contained in paragraphs fourth and fifth of the will, is meant the heirs at law of the testator determined as of the time of his decease; that Wallace S. Allis, as administrator d. b. n. of the estate of J. DeTrafford Blackstone, John T. Almy, as executor of the will of William N. Blackstone, William H. Allen, as administrator d. b. n. c. t. a. of the estate of Louis L. Blackstone, and Mrs. Harriet B. Camp, are each entitled to receive from the trustees of said trust estate a one-fourth part thereof; and that the third and fourth questions upon which advice is asked are to be answered in the negative.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.