OLIVER S. WHITE, TRUSTEE, *vs.* GEORGE T. SMITH
ET ALS.

* Third Judicial District, Bridgeport, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The controlling fact in the interpretation of wills is the expressed intent.
The testator's language will be read in its entirety with the purpose
of gathering from its general scheme, scope and character, and the
nature of its provisions, what the intention of the testator was. In

———

* See note on page 665.

White *v.* Smith.

this search for intent, purely artificial and arbitrary rules of literary construction can play but a small part.

A direction in a will for the division of certain property between persons named, imports a direct gift to them.

There is a fundamental difference between a testamentary gift in remainder to such of several named or described persons "as may be living" at the termination of the life estate, and a like gift to such persons "or as many as may be living" at that time. In the former case the gift is necessarily regarded as one to persons whose identity is left for future ascertainment and whose existence at that future time, either individually or by any representative of the group, is also uncertain; consequently the gift does not vest during the continuance of the life estate. In the latter case the gift, made in language of present operation, is to persons then in existence, while the alternative gift, dependent upon future contingencies, is merely substitutionary; and therefore the estate vests in point of interest or right at the death of the testator in all the then existing legatees, subject to be divested, as one or more of them may die, in favor of those who survive the life tenant. If, however, none survive him, the contingency in which the estate was to be divested has not occurred, and the interest of the original legatees, having once vested in them, passes on to their respective legal representatives.

A testatrix, after creating life estates, provided that at the death of the last life tenant the property should "be equally divided between the three children of my brother *A*, viz., *B*, *C* and *D*, or as many as may be living at that time, to hold to them, their heirs and assigns forever." *B* and *C*, each unmarried, died, one before, and the other after, the testatrix, and later, but before the expiration of the life estate, *D* died leaving three children. *Held:*—

1. That the legal representatives of *C* and of *D* were each entitled to one half of the remainder in controversy.

2. That the claim made in behalf of the estate of *D* and her three children, that the donees in remainder took as joint tenants with the right of survivorship, was not well founded.

The law of this State prefers a tenancy in common to a joint tenancy; and a joint tenancy with the right of survivorship can be created only by the express terms of the gift.

The rule of construction mentioned in *Farnam* v. *Farnam*, 53 Conn. 261—that where the only gift is found in a direction to pay or to distribute at a future time, the presumption is that a gift to vest only at that future time was intended—is so artificial and unsatisfactory that it has been disregarded in our more recent cases.

The law favors vested estates.

If a testamentary provision is fairly open to two constructions, that which will avoid intestacy will be preferred.

This court will not ordinarily give advice as to the construction of a will unless all the persons interested in the result are parties to the

action; but it may do so, in its discretion, where the effect of the advice, as in the present case, is to give to the missing party all that he could possibly claim, leaving it to the trial court to secure his presence before final judgment is rendered.

\* Submitted on briefs November 5th, 1913—decided January 15th, 1914.

SUIT to determine the construction of the will of Mary G. Totten of New Haven, deceased, brought to and reserved by the Superior Court in New Haven County, *Gager, J.*, upon the facts alleged in the complaint, for the advice of this court.

Mary G. Totten died in 1875, leaving a will duly probated. By the will she gave the life use of all her property to her sister Charlotte A. Totten and brother Thomas H. Totten and the survivor of them. Further disposition of the property was made in the following language:—

"At the decease of said Charlotte A. Totten and my brother Thomas H. Totten I give and devise to my sister Elizabeth T. Kip and to my niece, Mary E. Kip (if they shall be living at the time) the use, improvement and income, of the above named property for their sole use and benefit during their natural lives, to be divided between them share and share alike.

"In case of the decease of my said sister Elizabeth T. Kip or niece Mary E. Kip either prior or subsequent to coming into possession of said bequest, I will and direct the portion of property the use of which was devised to said deceased to be divided equally between the three children of my brother George M. Totten, viz: Gilbert

---

\* Some time after this case was submitted to the court on briefs at the June Term, 1913, in New Haven, it was remanded for the purpose of citing in additional parties, and came again before the court at its October Term, 1913, in the third judicial district. The main record and briefs will be found in the volume of *Records and Briefs* for the June Term, 1913, in the third judicial district, and the supplementary record in the volume for the October Term, 1913, in the same district. *Reporter.*

T. Totten, Marie E. E. Totten and Harriette S. I. Totten or as many as may be living at that time, to hold to them, their heirs and assigns forever."

Her brother Thomas H. Totten and nephew Gilbert T. Totten died unmarried before the testatrix. Elizabeth A. Kip died in 1882 and Harriette S. I. Totten in 1885. Charlotte A. Totten died in 1892, having enjoyed the life use of the property. Thereupon one half of the property was distributed and delivered to Marie E. E. Totten, then the wife of George P. Smith, and the only surviving child of George M. Totten. The other half was set to a trustee to hold under the trust in favor of Mary E. Kip, then by marriage Mary E. McMaster. Marie E. E. (Totten) Smith died July 19th, 1912, leaving surviving her three children and no husband. She left a will duly probated in which her children were given all of her estate, except certain specific legacies, and named as executors. They have since qualified and are parties to this action. Mrs. McMaster died January 14th, 1913, leaving one child, her only heir at law, and no husband. She left a will duly probated in which she gave all of her estate to her child and named him as executor. He has qualified and is a party to the action. The four living persons last named have also appeared in their individual capacity. Mrs. McMaster was the only heir at law of her mother, Elizabeth T. Kip. The administrator d. b. n. c. t. a. of the estate of the testatrix is made a party, as are also sundry persons, the heirs at law of Mrs. Totten.

The present contention concerns the disposition of the fund held in trust for Mrs. McMaster's life use. The administrator of Mrs. Totten's estate and certain of her heirs at law claim that it is her intestate estate and should be divided as such among her heirs at law. The children of Marie E. E. (Totten) Smith, in their individual and representative capacities, claim that their

mother, as the survivor of the three children of George M. Totten, became vested with the entire fund and that they, as her legatees and devisees, are entitled to receive the property from the hands of the trustee.

The questions presented for advice are: " (1) Whether said three children of said Marie E. E. Smith are entitled to said trust estate under said will of said Mary G. Totten. (2) In the event that said three children of Marie E. E. Smith are not entitled to said estate under said will of Mary G. Totten, whether said estate is intestate estate of said Mary G. Totten and belongs to her heirs at law."

*E. P. Arvine,* for the plaintiff.

*Edmund Zacher* and *William B. Ely,* with whom was *S. D. Jones* of New York, for George T. Smith *et al.*

*A. Heaton Robertson* and *Henry H. Townshend,* for Gilbert T. McMaster, individually and as executor, *et al.*

*Grace A. Taylor* of New York, for herself.

PRENTICE, C. J. The questions presented for the advice of the Superior Court arise out of a provision of the testatrix's will whereby she willed and directed that portions of her estate given for certain life uses should, in the event of the decease of certain life tenants either prior or subsequent to their coming into the enjoyment of the property given for their respective uses, "be equally divided between the three children of my brother George M. Totten, viz: Gilbert T. Totten, Marie E. E. Totten and Harriette S. I. Totten or as many as may be living at that time, to hold to them, their heirs and assigns forever."

This direction for a division imports a gift. *Angus* v. *Noble,* 73 Conn. 56, 64, 46 Atl. 278.

The fundamental question of the case relates to the time of the vesting in interest. Did the gifts over to the children of George M. Totten so vest immediately upon the testatrix's death, or was their vesting held in abeyance until the death of the life tenant should disclose whether any of the remaindermen were then living, and if so, who they were?

Those who are claiming intestacy invoke to their aid a rule of construction referred to in *Farnam* v. *Farnam*, 53 Conn. 261, 281, 2 Atl. 325, 5 id. 682, as being worthy of sufficient consequence to justify notice, to wit: that where the only gift is in a direction to pay or distribute at a future time, the presumption is that a gift to vest at such future time was intended. This principle has had some vogue in New York, and perhaps elsewhere, but so artificial and unsatisfactory is it that in our more recent cases it has been relegated to the domain of the inconsequential. *Angus* v. *Noble*, 73 Conn. 56, 64, 46 Atl. 278; *Johnson* v. *Webber*, 65 Conn. 501, 513, 33 Atl. 506. The controlling fact in the interpretation of testaments is the expressed intent as disclosed by the testator's language. This language will be read in its entirety, and with the purpose of gathering from its general scheme, scope and character, and the nature of its provisions, what the intention was. In this search for intent, purely artificial and arbitrary rules of mere literary construction can properly play but a small part, and, if followed, might easily result in an undeserved importance being attached to a purely accidental choice of words. Reading this will, which speaks not of time but of circumstances, it is apparent that the testatrix used the language she did as expressive of a gift and with no thought of having any other significance attached to it.

Clearly the provision in favor of Gilbert T. Totten, who died without issue before the testatrix's death,

carried nothing.  If there was a vesting upon her death, it was in the two children of George M. Totten who survived her, to wit, Marie and Harriette.  If the vesting was in abeyance, there never has been or can be one.

The gift over is to three persons described as the children of a brother and designated by name, "or as many as may be living at that time."  The time referred to is plainly that of the death of the life tenant.  If the alternative language quoted is to be interpreted as the equivalent of "to such of the children of George M. Totten named as shall be living at that time," the cases are in accord in holding that there could be no vesting before the time referred to should arrive, and that a failure of the limitation over would result, if there should prove to be no survivor.  Such, however, is neither the interpretation nor the effect which the courts have given to provisions like that before us, and similar ones.

Language identical with that which the testatrix used has been before the English courts upon several occasions.  In *Penny* v. *Commissioner for Railways*, L. R. (1900) App. Cas. 628, the Privy Council had before it a will in which the testator had given his wife the life use of all of his real estate, with remainder over in trust for four sons and stepsons named, "or such of them as should be living at the time of the decease" of the wife and who should attain twenty-one years of age.  It was held that each of the four sons and stepsons took a vested interest, subject to being divested in the lifetime of the widow, in favor of those, if any, who should survive her and attain the age of twenty-one.  Lord Lindley, who delivered the opinion, says (p. 634): "The form in which the first devise to the stepsons and son is expressed is in a very common form, and its effect is well established.  It is not equivalent to a separate devise to such of the devisees as shall survive the widow and at-

tain twenty-one. The effect of the clause is to give to all the devisees vested interests in fee subject to be divested as regards such devisee, in the event of his death in the lifetime of the testator's widow, in favour of those devisees (if any) who survive her and attain twenty-one."

This decision was not the first of its kind. In *Sturgess* v. *Pearson*, 4 Mad. 411, 413, decided in 1819, there was the same situation and the same conclusion. The gift there was of a one-fifth share of the testator's estate to a daughter for life, with the further provision that after her decease the share was to be equally divided amongst her three children, "or such of them as shall be living at her decease, the same to be paid to them at their age of twenty-one years." It was held that the children took interests which vested upon the death of the testator.

In *In re Sanders' Trusts*, L. R. 1 Eq. Cas. 675, 684, there was a limitation over to three persons "or unto such of them as should be living" at the life tenant's death. It was held that each of the three persons took a vested interest upon the death of the testator.

These cases furnish an unusual series of strictly analogous situations. Others recognize the same principle. In *Harrison* v. *Foreman*, 5 Ves. Jr. 207, 209, 210, the limitation over was to two named children of a cousin in equal moieties, and in the case of the decease of either of them in the lifetime of the life tenant, then the whole thereof to the survivor of them living at the life tenant's decease. It was held that each of the children took a vested interest, to be divested only upon the happening of the contingency named. The court said that no words could be more clear for a vested interest.

In *Browne* v. *Kenyon*, 3 Mad. 410, 416, there was a limitation over to *C* and *D* in equal shares, or the whole

to the survivor of them. It was held that the gift to *C* and *D* was a vested interest in them as tenants in common, subject to be divested if one only should survive the tenant for life. In *Belk* v. *Slack*, 1 Keen, 238, the remainder over was to a brother and sister, share and share alike, or to the survivor or survivors of them. It was held to be vested and not contingent. In *White* v. *Baker*, 2 De G. F. & J. 55, 61, the correctness of the principle of these cases was recognized, but it was held that the situation was such as not to justify its application. The same is also true of *In re Clark's Trusts*, L. R. 9 Eq. Cas. 378, 379, where the doctrine of *Sturgess* v. *Pearson*, 4 Mad. 411, was reasserted.

It is worthy of notice that this last group of cases regards a provision in favor of a number of persons or the survivor or survivors of them at the termination of the preceding estates, as the same in legal effect as that which appears in the will under construction. *Browne* v. *Kenyon*, 3 Mad. 410, 416; *In re Sanders' Trusts*, L. R. 1 Eq. Cas. 675, 680.

Our investigation leads to the conclusion that the particular provision of Mrs. Totten's will relating to survival has rarely been before the courts of this country for construction. In *Weatherford* v. *Boulware*, 102 Ky. 466, 43 S. W. 729, the gift over was to the heirs of the life tenant, or to such of them as should be living at the life tenant's death. It was held that a son of the life tenant, who had predeceased her, was vested with an estate by way of contingent remainder which he could convey. American cases are not infrequent where the gift over differs from that in the will only in this, that the gift over is either to a number of persons or the survivor or survivors of them, or to a number of persons with provision that, in case of the death of any of those designated before the estate should vest in enjoyment, the children or issue of such deceased should take in his

or her stead. These cases generally hold that the members of the original group take vested interests, subject only to a divesting in the contingency of their death before the time arrives when the gift takes effect in possession. *Jeffers* v. *Lampson,* 10 Ohio St. 101, 104; *Ducker* v. *Burnham,* 146 Ill. 9, 25, 34 N. E. 558; *Thaw* v. *Ritchie,* 136 U. S. 519, 545, 10 Sup. Ct. Rep. 1037; *Darling* v. *Blanchard,* 109 Mass. 176, 177; *Crane* v. *Bolles,* 49 N. J. Eq. 373, 382, 24 Atl. 237; *Heilman* v. *Heilman,* 129 Ind. 59, 64, 28 N. E. 310. The opinion in *Darling* v. *Blanchard* (p. 178) brings out clearly the distinction to be made between gifts of the character stated and one to such as may be living.

The cases recognize a fundamental difference between a limitation over to such of the members of a group of designated persons as may be living at the death of a life tenant, and one to a group or such of them as may be then living, or one to the group or the survivor or survivors of them. The first is regarded, as it necessarily must be, as one to persons whose identity is left to future ascertainment, and whose existence at that future time, either individually or by any representative of the group, is also uncertain. It speaks as of the future, and deals only with conditions which may then exist. The others, and their like in substance, embody language of present operation. They speak in the present and give as of the present to persons in existence when they speak. Future contingencies which may arise during the continuance of the intervening estates are provided for, but only in a substitutionary way. The primary provision is that all shall take. That which may by possibility defeat this result is alternative. In its essence the situation created is like that which results from a limitation over to a single person, and in the event of his death to others, as, for example, his children or issue. Gifts over of this latter character are

White *v.* Smith.

frequent and familiar, and are always held to create a vested interest in the original donee subject to a divesting. *Allen* v. *Almy*, 87 Conn. 517, 89 Atl. 205. The cases have simply followed the apparent analogy between the two situations, and have looked upon a limitation over, such as Mrs. Totten made, or one to several persons or the survivor or survivors of them, as creating a vested interest in the original donees with a substitutionary provision in the event of the death of one or more of them before the time of the vesting in possession should arrive.

Gray, in his work on Perpetuities (2d Ed.) p. 81, well states the test to be applied in making practical application of the distinction observed, and illustrates the effect of it as follows: "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus on a devise to *A* for life, remainder to his children, but if any child dies in the lifetime of *A* his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to *A* for life, the remainder to such of his children as survive him, the remainder is contingent."

It will be noted that the doctrine of these cases has the support of the principles of construction founded in public policy (1) that the law favors vested estates, and (2) that if a provision is fairly open to two constructions, that which will avoid intestacy will be preferred. *Allen* v. *Almy*, 87 Conn. 517, 89 Atl. 205; *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957. The first of these principles is one of no small consequence, since the preference of the law for vested estates goes so far that a construction

which makes an estate vested instead of contingent ought to be adopted if the language of the will will fairly admit of it. *Farnam* v. *Farnam*, 53 Conn. 261, 278, 2 Atl. 325, 5 id. 682. "As a general rule, to create a contingent remainder, the intent to that end on the part of the testator must be so clearly indicated as to practically leave no room for construction." Gardner on Wills, 508.

. Marie E. E. Totten and Harriette S. I. Totten, upon the decease of the testatrix, took defeasible vested estates·as tenants in. common in the property in controversy.

The second question which the record presents is as to the effect upon these estates, so vested, of the death of both Marie and Harriette before the death of Mary E. Kip (McMaster), the life tenant.

All of the English cases above cited present precisely this question, and all agree in the conclusion that there was no divesting of the estates originally vested, since the event or events, upon which the divesting was conditioned, was confined to the death of one or more, and·the survival by one or more at the time when the vesting in possession in the survivor was to take place. The principle applied in reaching this conclusion is that a vested gift will not be defeated unless it is clear "that the very case has happened, in which it is declared that the interest shall not arise." *Harrison* v. *Foreman*, 5 Ves. Jr. 207, 208. This rule was approved by us in *Austin* v. *Bristol*, 40 Conn. 120, 136, where, citing *Harrison* v. *Foreman*, we said: "It is a familiar rule that if there are clear words of gift giving a vested interest to parties, the court will not permit that absolute gift to be defeated unless it is perfectly clear that the very case has happened in which it is declared that the interest shall not arise." Applying this principle, the English courts have repeatedly. and con-

sistently held that the contingency which should accomplish a divesting had not happened where not some but all had died, and there was no one of the original group living to take as a survivor of them. They have held that the contingency provided for involved the existence of a survivor to take by way of substitutionary gift the vested estates defeated by the failure of the other donees to survive to the appointed time. *Harrison* v. *Foreman*, 5 Ves. Jr. 207, 208, 209; *Sturgess* v. *Pearson*, 4 Mad. 411, 413; *Browne* v. *Kenyon*, 3 Mad. 410, 416; *In re Sanders' Trusts*, L. R. 1 Eq. Cas. 675, 684; *In re Clark's Trusts*, L. R. 9 Eq. Cas. 378, 381; *Belk* v. *Slack*, 1 Keen, 238, 240; *Penny* v. *Commissioner for Railways*, L. R. (1900) App. Cas. 628, 634. The position taken in these cases is stated in *Sturgess* v. *Pearson*, 4 Mad. 411, 413, as follows: "The vested interests first given by the will, are, by the form of the expression, only defeated in case there shall be some or one, and not all of the children living at the mother's death; but that event did not happen, for there was not one child living at the mother's death. The alternative branch of the sentence, therefore, fails, and the primary expression, which gave vested interests to the children, takes effect."

We are not aware of any American cases in which the present situation was involved, or the question immediately under consideration passed upon. Whether or not there be such, the doctrine of the English cases is too well established to be disregarded lightly, and the reasons in support of it are too substantial to have their authority shaken where the provision of the will, as in that before us, makes the substitutionary donees those who may be living at the time of the vesting in possession. It does not make survival by some or one of others the condition of defeating the right of the others, so outlived, to their share. The condition is that those living at the time of the termination of the life tenancies

shall take as substitutionary donees. If there are none living at that time, there is nobody to fill the rôle of substitutionary donee, and the substitutionary gift necessarily fails, leaving the original gift, vested in interest, unaffected. We are of the opinion that the estate which vested in interest in Marie and Harriette, as the two children of George M. Totten who survived the testatrix, were not divested as to either of them by any event which occurred, and that upon the death of Mrs. McMaster these estates became vested in enjoyment in their estates, share and share alike.

The alternative claim, made on behalf of the executors of Marie's estate and her children, that the entire trust fund became vested in her upon the death of her sister Harriette as being the survivor of the children of George M. Totten named in the will, since the gift over to them was one to a class as joint tenants with the incident of survivorship, is not well founded. The two of the three children who survived the testatrix did not take as joint tenants. The gift was to persons *nominatim* to be divided equally between them. These features are indicative of a tenancy in common, and there is nothing in the will to suggest that the testatrix intended to create a joint tenancy, a tenancy not favored in the law. We had occasion in *Allen* v. *Almy*, 87 Conn. 517, 89 Atl. 205, to discuss this subject at some length, as also the incident of survivorship as attached to joint tenancies. What was then said need not be repeated here. Reliance is placed upon the provision made in the will for survival as indicative of an intention on the part of the testatrix to create estates in joint tenancy. The survival which the will provides for, however, is not one which concerns the nature of the estates taken, but one for the determination of the membership of the class of takers. Theobald on Wills (7th Ed.) 680. The will deals with this subject of

White *v*. Smith.

survival, and upon its provisions the claims of the parties must rest, with the result that the claim of the executors of the will of Mrs. Smith, that they are entitled to receive directly from the trustee the entire trust fund in his hands, is not well made. They are entitled to so receive only one half of the fund; the other half belongs to and is payable to the estate of Harriette. Apparently these executors will ultimately be entitled to receive this second half, but if so, it will be through the operation of the law of descent and the process of administration of the estate of Harriette, which must be had in the Court of Probate, and cannot be had in the Superior Court. No representative of Harriette's estate is a party to this suit. We have hesitated as to the propriety of our advising the Superior Court in this situation, but as our advice entitles that estate to all that could be claimed by it, we have decided to give it, leaving the Superior Court to take proper steps before its rendition of a judgment affecting Harriette's share.

The Superior Court is advised that the trust estate in the plaintiff's hands is not intestate estate of Mary G. Totten, that the executors of the will of Marie E. E. Smith are entitled to receive one half thereof from the plaintiff, and that the other half belongs to the estate of Harriette S. I. Totten.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.