THE BRIDGEPORT-CITY TRUST COMPANY, TRUSTEE
(ESTATE OF NOYES E. ALLING) *v.* ARTHUR
E. ALLING, EXECUTOR, ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued May 16—decided July 12, 1939.

*Samuel F. Beardsley* and *Morris B. Canning,* for the
defendant executors.

*David S. Day,* with whom, on the brief, was *Norman
K. Parsells,* for the defendants other than the execu-
tors.

MALTBIE, C. J. On January 10, 1929, Noyes E. Alling entered into a trust agreement with the City National Bank and Trust Company, to which the plaintiff has succeeded, under which he transferred mortgages, notes, cash and other personal property aggregating $150,000 to it and which contained the following provisions as to use and disposition of the income and principal of the property: "a. To pay the net income in quarterly installments unto my daughters, EDNA ALLING DOHERTY, of Bridgeport, Conn., MADELINE ALLING MASON, of Bridgeport, Conn., and RUTH ALLING BARBER, of Wilkes Barre, Penn., or the survivor or survivors of any of them, share and share alike, as long as they or any of them shall live. b. After the death of all of said beneficiaries, said net income shall be distributed unto as many of my grandchildren as shall survive my said daughters, share and share alike, as long as they or the survivor or survivors of any of them shall live. c. When all of said grandchildren shall be deceased, the corpus of said Trust Estate shall be equally divided among such of my lineal descendants as shall survive my said grandchildren, share and share alike, to belong to them and each of them absolutely and forever. d. If there should be no lineal descendants of mine who shall survive my said grandchildren, then I order and direct that the corpus of said Trust Estate be equally distributed between the Bridgeport Hospital and the Boys' Club of Bridgeport, to belong to them and each of them and their successors and assigns absolutely and forever."

When the agreement was made, two of the three daughters had no living husband but one had a living son and the other a living daughter, and the third daughter, who was then married and thirty-three years old, also had one son. Nearly five years later Mr. Alling executed a will in which he made provisions

for the disposition of the principal and income of the residue of his estate almost exactly in the same terms as in the trust agreement, except that, in the will, instead of referring to his grandchildren only as such he named them. The principal issue involved in this action is the validity of the provisions for the disposition of the principal of the trust fund after the death of the grandchildren. If by the direction to distribute the income "unto as many of my grandchildren as shall survive my said daughters" the testator intended to include grandchildren born after the trust agreement took effect, then the gift of the principal when "all of said grandchildren shall be deceased" to such of his lineal descendants as might then be surviving would make it possible that a lineal descendant not born within the period of a life or lives in being at the time the trust was created and twenty-one years thereafter might be within the terms of the gift and so it would come within the rule against perpetuities. *Shepard* v. *Union & New Haven Trust Co.*, 106 Conn. 627, 635, 138 Atl. 809. On the other hand, if Mr. Alling meant, by his use of the words "my grandchildren," the grandchildren then living, the gift of the principal would necessarily vest at the death of the longest surviving of the three and no invalidity would attach to the various gifts. *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 159, 147 Atl. 526.

It is an established rule in the interpretation of wills, equally applicable here, that a construction which would make void a devise or bequest as an illegal perpetuity is to be avoided if the language used is fairly open to an interpretation which would make the gift valid. *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645; *White* v. *Smith,* 87 Conn. 663, 673, 89 Atl. 272; *Wallace* v. *Wallace,* 103 Conn. 122, 134, 130 Atl. 116; *Shepard* v. *Union & New Haven Trust Co.,* supra,

635. In *St. John* v. *Dann,* 66 Conn. 401, at page 405, 34 Atl. 110, we quoted from Gray on Perpetuities as follows: "When the expression which a testator uses is really ambiguous, and is fairly capable of two constructions, one of which would produce a legal result, and the other one that would be bad for remoteness, it is a fair presumption that the testator meant to create a legal rather than an illegal interest."

A quite common situation falling within this rule of construction is one where a testator makes a gift to his heirs at law to take effect at the termination of an intermediate estate or estates and it is uniformly recognized that unless the will indicates the contrary heirs at law will be held to mean those who answer that description at the death of the testator, if to do so will make the provision valid. *Allen* v. *Almy,* 87 Conn. 517, 522, 89 Atl. 205; *Nicoll* v. *Irby,* 83 Conn. 530, 533, 77 Atl. 957; *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 271, 135 Atl. 555. In *Beers* v. *Narramore,* 61 Conn., 13, 18, 22 Atl. 1061, we construed a gift at the expiration of a life estate to "the widow" of a son of the testator as meaning only the woman who was the son's wife at the time the will was executed, although it was claimed that the provision constituted an illegal perpetuity because she might die and he might marry again; and we said (p. 19) that the use of the word "widow" was the equivalent in effect of the word "wife" and that, had the latter word been used, "as there was then *in esse* a person fully answering that description, and only one, such person must be understood to be intended, although it is indeed possible that this person might die, and another person might afterwards, at a remote date, as suggested, be born, who in another generation might come to answer the same description. Suppose the language used had referred to the 'son' of Frank, and at the time there

was a son and only one, could it be successfully claimed that the testator did not mean to identify a certain individual, but to give either entirely to one, or to divide among many, of Frank's male issue thereafter born?" This case was followed in *Johnson* v. *Webber*, 65 Conn. 501, 509, 33 Atl. 506, where the gift at the expiration of certain life estates was to the husband of the testator's granddaughter, and we held that "the beneficiary intended was the then husband of the granddaughter," saying, with reference to the case of *Beers* v. *Narramore,* supra: "There, as here, the language descriptive of the beneficiary was quite general and indefinite, but the court held that it meant a certain and definite person answering the description when the will was made. The reasoning in that case upon this point is equally applicable here, and we adopt it without repeating it." In *St. John* v. *Dann,* supra, we held on like reasoning that a provision for the "family" of a son of the testator was restricted to those falling within that description whose interests would not offend against the statute against perpetuities, saying (p. 405): "If the word had been followed in the will by a proviso that it should not be deemed to include any person except such as were in being at his decease or children of such persons, it is clear that no perpetuity would have been created. We are of opinion that the law, in effect, supplies such a limitation. The provision for his son's family is to be construed as referring only to such members of it as may legally participate in the testator's bounty."

Such slight indications as there are in the case before us as to the particular persons whom Mr. Alling meant point to the conclusion that he had in mind the grandchildren living at the time the trust agreement was made. Two of his daughters were not married at that time and while the third was married and was thirty-

three years old she had had no child born to her during the preceding thirteen years. On the other hand, there were then three living grandchildren. When he provided that the income should be distributed to "as many of my grandchildren as shall survive my daughters," the language is such as would naturally be used as applying to his grandchildren then in being. When, some five years later, he drew his will, he referred to these three grandchildren by name, yet no reason appears for any change in his intent as regards the beneficiaries of his bounty. While these indications are slight, they confirm the conclusion that this case is one for the application of the rule that, when a provision in a will is fairly open to a construction which will avoid the creation of an illegal perpetuity, such an interpretation should be adopted in preference to one which would render nugatory the intent of the testator.

Our conclusion is that the income of the trust is to be distributed after the death of all of the daughters of Mr. Alling to the three grandchildren living when the trust was created or the survivor or survivors of them, and at the death of the last survivor of them the principal is to be turned over either to the lineal descendants of the testator then living or to the hospital and the boys' club named in the will in accordance with its terms.

We answer the first question propounded in the reservation, asking whether the gift in subdivision c. of paragraph one of the trust agreement is in contravention of the rule against perpetuities and therefore invalid, "No." It is not necessary to answer the other questions.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.